# UNITED STATES DISTRICT COURT

### For The Northern District Of New York



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUN 1 3 2016
AT_____O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

**Rosevelt Beal**
**Plaintiff**
    v

**SUNY Cortland &Binghamton, SUNY Chancellor&**
**Office Of Civil Rights**
Defendant/Respondent

Civil Action No. 5:16-cv-666 (BKS/ATB)

## PETITION

Please take notice:
The following petition pertains to the erroneous decision and unethical conduct of the Office of Civil Rights as it relates to the plaintiff's denial of his Bachelor's Degree in Political Science at SUNY Cortland, SUNY Binghamton, and the SUNY Chancellor's Office.

### Pertinent Statutes, Regulations and Caselaw

1. Title IX, Education Amendments of 1972 Retaliation

2. 14th Amendment-"Right to pursue happiness"

3. Article 14 U. S. Constitution "Due Process"

4.20 U.S.C.Section 99.10 studenent access to records

5.Schools, Univerersities,& Colleges N.Y. J2d Section 109 "a board of education is not expressly empowered to disipline a student by lowering of grades. to warrant this type of academic sanction it is essential that the student's misconduct be related to his or her academic performance in the paricular course"

6. N.Y. J2d sections 60 of Art 78 and Rel Pro contradicting and conflicting evidence, conclusory allegations. uncorroborated hearsay or mere speculative interferences, the determination must be annulled

7. N.Y. J2d section 53 of Schools Universiities & Colleges "arbitrary and capricious determinations

8. Title VI of the Civil Rights Act of 1964 discrimination on the basis of race, color, or   national origin, Title III and Title V

9.  TITLE 34—EDUCATION § 100.7 Conduct of investigations

10.United States v. June

11. NY Supreme Court Nassau County 67 Misc,2d 651 Misc 1971Ryan v Hofstra University

-university cannot expel, bar and fine a student without following fair and reasonable proc-

dure

12. Supreme Court of Michigan Honorable Beverley NETTLES-NICKERSON, Judge, 30th Circuit Court.Docket No. 133929.Calendar No. 1.Decided: June 13, 2008- Note to the court- this case is listed as a means to highlight the principle of the "pattern of misconduct" as OCR displays this pattern in each of the plaintiff's complaints.

13. Minnesota Statutes, section 645.21-No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature

14. *Howard v. Grinage,*  F.3d 1343, 1350 (6th Cir. 1996). 400 F.3d 3473 U.S.  159 426 U.S. 229 526 U.S. 629 524 U.S. 274 544 U.S. 167 523 U.S. 833  533 U.S. 194  503 U.S. 115 528 F.3d 426 739 F.3d 909 38 F.3d 282 205 F.3d 303

15.PETERSON v. NORTHEASTERN LOCAL SCHOOL DISTRICT Case No. 3:13cv00187. Due process and neglect.

## Brief Overview

The plaintiff would first like to give an overview of the chronological evernts by presenting the major history with exhibits of this traumatizing ordeal. There are actually many other factors that should be entered however due to the lack of tolerance and energies toward this continuing dilemma. The plaintiff will not go into those details. However he would like to mention that upon applying for readmission, back in 1999. SUNY Cortland further attempted to demise the plaintiff by requiring that he be evaluated by a therapist. For what? Because he asked a professor who was so arrogant and prejudice that she considers herself "Distinguished" and couldn't accept the fact that a Black man inqires about his grade? Something that he requested of 4 other instructors without issues. The denial of readmission in itself was an "estoppel" as after the plaintiff completed the evaluation Cortland reneged on his readmission using a bogus 1.9 GPA as a ruse to deny that readmission. Had the plaintiff been given his proper grades from that last semester in which he was unjustly suspended, his GPA would have been well over 2.0. Moreover OCR has fabricated the reasons for the various complaints filed by the plaintiff. Each and every complaint was of a completely different nature. This will be clearly viewed in this petition. The plaintiff would also like to bring to the attention of the court that although many courts claim a time bar on these events. There are no established statutes of limitations on the Constitution. Civil liberties are just that. The Freedom to live according to the liberties. If they are continuously denied then the violation of those liberties are ongoing. Its not stated that last year you had a right to an education, or a right to pursue happiness, but this year you don't have a right. No, these rights are birth rights as American citizens as human beings. God given rights. None the less the recent complaint pertaining to OCR's recent decision is very current. However due to the limitations of laws enforced by OCR, the plaintiff not only seeks that "time relates back" (due to misconduct of OCR's investigation) as it pertains to the original complaint of racial discrimination, which is within OCR's scope  (as the issue was totally ignored by OCR), but he also seeks an out right granting of his Bachelors in Political Science based on the current denial by SUNY and pertinent Civil procedure. The plaintiff's request for a waiver regarding the time limitation was also an issue that OCR disregarded as the extension should have been granted on the grounds of "misconduct". Moreover these issues are retroactive according to constitutional

law and "legistlative intent".  (Cooper v. Watson,) 290 Minn. 362, 369, 187 N.W.2d 689, 693 (1971

Documented evidence proves that this case has been a collusive orchestation with racial discrimination as the motive throughout the entire ordeal. Racial discrimination was cleary displayed in the initial complaint and blatantly neglected by OCR. One last addition as the plaintiiff is Pro Bono and believes he will ,not receive proper consideration based on previous experiences in the judicial system. He is respectfully requesting that the magistrate be attentitive to notes on the actual exhibits as they will hopefully assist in the right evaluation of the process. Therefore the plaintiff prayerfully requests that the court be considerate in reviewing the following, in order to right a destructive wrong  for the sake of true justice. (Adarand Constructors Inc v Pena 515 US 200,222, (1995) racial classifications are reveiwed under strict scrutiny standards.

### Chronological Facts

1.  In December of 1998 following an unjust hearing the plaintiff was suspended for a period of one year ( Supreme Court, Nassau County 67 Misc,2d 651 Misc 1971Ryan v Hofstra Univ- university cannont expel).  Plaintiff was fasley accused of Harrassment, and conspired upon by 5 other parties. To include the Judicial Coordinator who denied the plaintiff Due Process. All of the false witnesses testimonies contradicted each other. Moreover one witness (Daneille Dubois) who was African American was not present at the alleged incident nor was she compelled to be at the hearing desptite having given a written statement. This is a violation of Cortland's Student Code of Conduct section 10 G(A), as the plaintiff was not granted Due Process in being allowed to question this witness (see exhibit p. 16). Please note the contradictions and note that the written statement by Tamara Hammond which is the only statement not signed. The plaintiff believes this is further proof indicating she had preplanned to fabricate various statements, and did not want to be charged with perjury or conspiracy. See exhibits pp. 1-15

2.  In May of 1999 plaintiff filed an article 78 in the New York Supreme Court in Cortland. Plaintiff was denied Due process. In addition documents were altered. No respondents were compelled to appear at the hearing despite being served. The only paricipating respondent was the Attorney General Patricia Bordanaro. In addition I am exhibiting the article 78 that was filed. Also   the court's decision follows. The plaintiff wants to bring to the attention of the court that this article 78 was in fact altered after it was submitted to the court. I will highlight and display what was actually stated. With all due respect as the plaintiff realizes that it is veiwed as the norm, and the magistrate's position is to stand behind various court officials. The first perception as with most is that the court doesn't conduct itself in such a manner as to be unethical, illegal, or prejudice. However this pettion was in fact altered. It would not even behoove the the plaintiff to write such a statement which never took place, nor did he testify as to such at the SUNY Cortland hearing. What has been altered is actually what the Cortland administration would have the magistate to beileive. The presiding judge was a SUNY Cortland graduate, and the clerk very well may have been affiliated with the Rainbow lesbian organization which had a major hand (according to sources) in this conspiracy. pp.16- 25

3.  In  Febuary of 1999 plaintiff filed complaint with Office of Civil Rights (OCR). OCR failed to conduct a legitmate investigation. OCR even attempted to have plaintiff arrested on false allegations of which were handled by the federal police.

4. In January of 2000 Plaintiff was assisted by Senator Libous's Office in getting admitted to SUNY Binghamton, Plaintiff completed 3 courses for 12 credits, however mid way through the semester plaintiff was falsley informed that he had no financial aid remaining. Though allowed to complete the courses the plaintiff was informed that he would not be allowed access to his grades until he paid 3000.00 up front.

5. After years of contending (off and on) with Binghamton regarding access to grades. In January of 2012 plaintiff filed a complaint with FERPA to no avail. See exhibit p 27

6. In November of 2013 Plaintiff filed another complaint with OCR regarding the wrongful denial of financial aid and denial of access to grades. Again OCR failed to conduct a legitimate investigation claiming that the same issues were presented by the plaintiff as in his previous complaint. Not withstanding it was an entirely different scenario. In addition letters from OCR were misleading and incorrect as to the proper issues. In one case one document states November 18, 2013 as my complaint having been received. however the school listed is incorrect and one other document is dated Dec. 23, 2013. These document reflect the same complaint. Thus OCR keeps poor records or they were intentionally wanting to create confusion.

7. The plaintiff returned to school in 2004 at Elmira College in Elmira, NY, and again in 2010 at South University and Strayer University both in Savannah GA.. In 2010 after 3 consecutive semesters at South University and Strayer University combined; NYSHED illegally placed the plaintiff in default at the end of his 3rd semester; depite his loans being in an in school deferrment as are all loans of students who are actively engaged in school.

## CURRENT ISSUES

1. In October of 2015 plaintiff inquired of the NYS Governor's Office. The office failed to do anything about the dilemma and even reneged on meeting with the plaintiff in person. After a second inquiry to the governor, the plaintiff's complaint was forwarded to SUNY Headquarters in Albany, NY.

2. The plaintiff's inquiry was a request to be granted his degree in Political Sceince as he had completed all NYS requirements. NYS requires 121 credits. The plaintiff possesses 128 credits all within the SUNY system. (see exhibits pp. 28- 36)

3. The summary of these credits are as follows: 116 credits were earned at SUNY Cortland, However the plaintiff transcript only reflects 104. The reason for this is unfair and illegal as in the semester of the suspension. The plaintiff was instructed to continue with his assignements, which he did. He was further instructed by Dean Franco to hand in all assignments to Campus Security, which he did. All courses entailed take home finals of which he completed. There are also 3 other colleges outside of SUNY where the plaintiff earned credits.

4. Moreover at the time of the suspension the plaintiff had an A, 2 Bs and a D in the 4 classes for 12 credits. All assignments were handed in prior to the suspension. However instead of the plaintiff recieving grades for the courses he was given "withdrawals". The plaintiff did not withdraw. These credits would have given him 116 at SUNY Cortland. Schools, (Univerersities, & Colleges N.Y. J2d Section 109)

5. In addition the 12 credits at SUNY Binghamton of which he has been denied would give him a total of 128 credits. Again NYS requirements are 121. SUNY Binghamton after all this time has

however finally forwarded a transcript to Excelsior College. The exhibit herein is an email I recieved last year after 17 years of denied requests. However it only contains one grade as they claimed unable to locate the remaining 2 classes. It now it appears that they have sent the transcript to Excelsior College in Albany, NY. (see exhibits pp. 31A, 37).

6. After dealing with SUNY Headquarters- a Ms Droz ignored my dilemma and sent a letter denying my request. Upon receiving this letter the plaintiff forwarded the issue to Senator's Issacson's Office in the state of Georgia. (pp. 38-39)

7. The plaintiff filed another complaint filed to OCR regarding the completion of required credits. Senator's Issacson's Office was to monitor the progress of this complaint. Ultimately they did nothing. Again OCR falsey gives the plaintiff the excuse, stating his complaint was the same as in 1999, and 2000 On every occassion the plaintiff complaints were dismissed as being the same. This could not possibly be as in '99 the issue was the unfair and unjust hearing, in 2000 it was the denial of financial aid and denied access to records. In 15' it pertained to an ongoing denial of his degree which has been completed since the year 2000.  (see exhibits pp. 40-47)

8. Presently the plaintiff has regained his motivation to go back to school and complete his degree at Excelsior (which he should not be forced to do). Over 10 years ago when the plaintiff first inquired at Excelsior. He was misinformed (perhaps deliberately) that he would have to take 70 credits to complete their requirements depite transfer credits. Now recently he discovered that he may only need to take 4 credits. However another attempt is being made to wrongly and illegally place him in default. The plaintiffs loans have all been consolidated and are handled by Great Lakes. (see exhibit p 48)

## CONCLUSION

Ultimately SUNY Cortland. SUNY Bingamton, The SUNY Chancellor's Office, and the Office Of Civil Rights have violated Title IX, Education Amendments of 1972, and Title VI of the Civil Rights Act of 1964 discrimination on the basis of race, color, or national origin. These violations as they relate to color and race are clearly displayed in the case of SUNY Cortland. It is only reasonable to conclude that SUNY Binghamton, The SUNY Chancellor's Office. and OCR followed suit in denying the plaitiff financial aid, access to records, denying his degree and failing to investigate. This can only mean that they supported the racial discrimination that transpired at SUNY Cortland. In the case of denied financial aid Binghamton was made aware of the good status of the plaintiff financial aid as Karen Taylor of SUNY Cortland (financial aid rep) had previously evaluated his status in his last semester at SUNY Cortland- stating that there was more than "enough aid to complete his degree". This was also confirmed by William D. Ford..

OCR was well aware of the racial discrimination initiated by Cortland as the conflicting testimonies amount to no more that "hearsay" and "speculation" and are without merit, and defaming. In fact they are downright fabrications. In addition. the undue process in that the plaintiff was disallowed from gathering witnesses for his defense, and disallowed from questioning an African American student (Danille Dubois) who gave a written statemtment is ample evidence that racial discrimination was the motive. In fact as previously stated Dubois was not present at the alleged incident nor was she compelled to be present at the Cortland Administrative Hearing. Moreover the Judicial Coordinator Patricia Cordner who acted so arbitrary and capricious that one would have thought her to be a prosecuting attorney rather than a judicial administrator. Cordner fabricating issues such as the plaintiff telling her that he called

Dr. Best a "Racist cracker" and her numerous "you said" accusations amounted to fabrications motivated by racism. Note that no other witness including Dr. Best states that she was call a " Racist cracker". In addition Cordner neglected to give the plaintiff a copy of the recorded hearing claiming that the recording device had malfunctioned. However the plaintiff had a portion recorded on his tape recorder. Cordner also evicted the plaintiff from the hearing for his merely questioning a false witness as to what she considered yelling. The plaintiff simply asked in a normal tone-"would you consider this yelling?". Then each time he gradually asked a little louder hoping to prompt the officer outside the door to determine if there was "yelling" taking place. The officer never came in until Cordner went out and fabricated more issues to have me escorted out. Moreover the written statement by Tamara Hammond falsely claiming that the plaintiff called Dr. Best "racist pig many times) is cleary a fabrication. If the court will again note that not even Dr. Best stated that she was called "racist pig" even one time. In fact no one claimed that the plaintiff called her a "racist pig". Certainly if he were yelling "at the top of his lungs" as they falsely testified at the hearing, someone other than Tamara Hammond would have heard it. This patteren of collusion and misconduct of the judiucials administrator is displayed throughout this entire ordeal. The misconduct of OCR is displayed thoughout this entire scenario, as the neglected a proper investigation (see exhibit p 49).


(Honorable Beverley NETTLES-NICKERSON, Judge, 30th Circuit Court.Docket No. 133929-Misconduct) This is cleary a clear case of misconduct and neglect by the The Office of Civil Rights (OCR). If OCR had conducted the investigation properly and not disregarded the documented evidence. In fact OCR contacted one party at SUNY Cortland in regards to all of the plaintiff's complaints. That individual according to OCR was Patricia Cordner How credible is that? Discrimination would have been found back in 1998 if the investigation had been properly conducted (see exhibit pp 49 Rather OCR chose to neglect their duties and attempt to have the plaintiff arrested in order to cover up this neglect. The reason given to the Federal Police for this attempt for such a bogus arrest was because the plaintiff left a voicemail with Ann Moretto stating that "at least I'll go to my grave with a peace". Now lets rationalize this. How could anyone in their right mind conclude that this was a threat? Was the plaintiff going to his grave with a piece? (I imagine a gun as it was the line of questioning by the police) As Moretto would have it conveyed. And if so- was the plaintiff going to resurrect from this grave and go after Moretto? I think not. Conclusively this ordeal was orchestrated and continual right up to the letter written by Ms. Droz of SUNY (see exhibit p. 38) . Thus all pertinent entities has been in violation from their first act of discrimination until the last (17 years), whether there was a ruse in place or not. As a result these entities are in violation of the foregoing: SUNY Cortland- racial discrimination, retaliation, undue process, estoppel, breach of contract, even criminal in that this was in fact conspired; SUNY Binghamton- retaliation, wrongful denial of financial aid and denial of access to academic grades which is also a crime in NYS;  SUNY Office of the Chancellor, retaliation denial of the plaintiff's Bachelors is based on racial discriminative issues .Barnhardt & U.S. v. Meridian Municipal School District 4:65-cv-01300-HTW-LRA1300(E).2013; Fayette County, Kentucky Schools Commit to End Disparate Disipline Practices,2010;  PETERSON v. NORTHEASTERN LOCAL SCHOOL DISTRICT Case No. 3:13cv00187.

The Plaintiff has been vigorously fighting for his civil liberties as they pertain to fair education, and the right to "pursue happiness". For appox. 17 years he has been wrongfully, and blatanly denied his education. resulting in loss of career. Despite his attempts to look beyond the discrimination and illegal conduct of various entities, by returning back to school, he has still been oppressed.

All three complaints filed with OCR entailed different issues however OCR neglected to do their job stating that all issues were the same. Even when Dean Virginia Levine falsely accused the plaintiff of calling Senator Winner's Representative Sperry Navone a "racist". (this can be confirmed at Senator Winner's Office in Elmira, NY) OCR claims it was the same issue (see exhibit p. 27A) The Office of Civil Rights has not enforced any of the plaintiff's civil rights as it pertains to his case. OCR has only aggrevated and further contributed to the pain and suffering and demise of the plaintiff. In his pursuit to embark upon something good and postitive in life. OCR and SUNY have forced him (some would state inadvertantly) into a lifestyle not conducive for happiness, nor his health. Since experiencing this ordeal the plaintiff has been diagnosed with diabetes which has been contributed by the undue stress experienced in this uncivil onslaught.

Ultimately the plaintiff's objective is to attend law school (of which he had a tentative acceptance at he time of the unjust suspension) at Northern University School of Law has been destroyed. His goals to continue working with youth in his community at home as a Family, and Educational Lawyer has been destroyed. Even his internship at Family and Children's Services in Albany through the Empire State Program has been destroyed.

When all of the orchestrated events are viewed in the plight of the plaintiff. It is obvious that there has been racial discrimination, collusion and conspiracy. If the plaintiff would had been treated fairly ultimately there would have been no hearing as the allegations were totally false. In fact If there had not been a conspiracy any lawyer would have gladly handled this case. However despite the plaintiff offering 10,000.00 retainers to lawyers. They refused to handle it. Now to experience even more anguish with  a source claiming to be a gov't entity: which is currently wrongfully and illegally attempting to place him in default; so that he's again denied that which he has already completed- is just more pain and suffering; stemming from the initital unjust act on the part of SUNY and OCR.  Moreover the plaintiff's loans have been consolidated, they are in deferment, and are handled by Great Lakes.  Currently the plaintiff is experiencing another attempt to prevent him from pursuing his career objectives.

In light of this the plaintiff is prayerfully requesting the courts grant his degree according to the federal laws of this country and NYS. Anyone else would be consideralby compensated for the undue stress, pain and suffering. However the plaintiff knows from 17 years of enduring this ordeal, and the simple fact that he's been denied what he has legally earned, it would be considered absurd for an African American to request monetary relief without an attorney.  In fact he has had to  give up the right and settle for the wrong.This blatant violation of the plaintiff's civil liberties has been continuous for 17 years. Despite the longetivity. The plaintiff's only request is to to have his BA  granted in Political Science that he might be able to salvage his life, and career objectives.

Respectfully,

Rosevelt Beal
Pro Bono
Ph 912-308-0129

# ortland

State University of New York College at Cortland

■ *Office of Judicial Programs*

November 23, 1998

Rosevelt Beal

Dear Mr. Beal,

I am in possession of a report that indicates your alleged involvement in the harassment of Dr. Judith Best outside of Old Main on Nov. 23, 1998. Effective immediately, I am placing you on interim suspension (Section Thirteen, A. of the *Code of Student Conduct*) until the conclusion of a campus hearing and any subsequent appeals related to this case.

You are restricted from all SUNY Cortland buildings and grounds pending the outcome of your hearing. Permission to conduct legitimate business at any other time or place on campus must be obtained from me.

Please be advised that you also are not to have any contact with Dr. Best during this period. If you should require any support from the counseling center during this time you can reach them at extension 4728.

Every effort will be made to expedite adjudication of this matter. It is your responsibility to contact the Office of Judicial Programs by 4:30 p.m. Wednesday, Nov. 25, 1998, to receive information regarding your hearing arrangements.

Be advised that should you be involved in any further reports of *Student Code* violations or fail to abide by the terms herein, I will withdraw permission for you to be on campus for any purpose (Section Thirteen, D. of the *Code of Student Conduct*).

Please feel free contact me if you need further clarification regarding this interim restriction.

Sincerely,

Patricia Cordner
Coordinator of Judicial Programs

cc:    Raymond Franco
       Michael Holland
       Public Safety





# Cortland
State University of New York College at Cortland

■ *Office of Judicial Programs*

## NOTIFICATION OF ADMINISTRATIVE HEARING (JRB)

Case # AH-014-98F
November 24, 1998

Rosevelt Beal
    REDACTED
PO Box 875
Dryden, NY  13053

Dear Mr. Beal,

The Office of Judicial Programs has received a report indicating that you may be responsible for violations of the <u>Code of Student Conduct</u>. Based on an initial review of the case, charges are being filed against you for violating the following College policies: C01, <u>Harassment</u>(3) and A03, <u>Disorderly Conduct</u>(3).

Allegedly, our report indicates that on Nov. 23, 1998 at approximately 10:55am outside of Old Main you verbally harassed and threatened Professor Judith Best. Also on Oct. 21, 1998 in Professor Best's office you were verbally harassing her. <u>In addition approximately two</u> weeks prior to the Oct. 21, 1998 incident you followed Professor Best out of the class and the building complaining about her confrontation with you concerning your excessive tardiness.

As a result of this allegation, your case is being referred to an Administrative Hearing at the Judicial Review Board level. Your hearing is scheduled for 11:30am, Tuesday, Dec. 1, 1998 in Corey Union, room 304. The scheduled Hearing Officer is Patricia Cordner.

The purpose of this hearing is to determine whether or not violations of the <u>Code</u> were committed, and to impose appropriate sanctions for any violations of policy. You are advised that this is a mandatory hearing, and that your absence without prior consent of the Office of Judicial Programs will result in a forfeiture of your ability to present information on your behalf. This hearing will only be rescheduled in the cases of a previously scheduled class or an emergency. The Coordinator of Judicial Programs shall determine legitimate grounds for rescheduling or missing a hearing.

P.O. Box 2000  Cortland, New York  13045-0900
Phone: (607) 753-4725 ■ Fax: (607) 753-2808


over

Please be further advised that all relevant information must be presented at the time of the hearing. You may bring any one person to serve as your advisor if you so desire, and are solely responsible for the appearance of both your witnesses and your advisor. In addition, should you wish to provide documentary evidence, this information must be submitted directly to the Office of Judicial Programs by the close of business on the school day prior to the hearing. This information must be submitted by its original author and signed and dated.

Enclosed you will find copies of all written information upon which this allegation is based. You will also find enclosed a brochure which includes a list of your due process rights, which you should review prior to the hearing.

Finally, be advised that the following witnesses are being called to offer information at the hearing: Judith Best, Jennifer Novesky and Tamara Hammond. This information is provided to you so that you might better prepare for this hearing. You are reminded that it is a violation of College policy to attempt to discourage another person from participating in the disciplinary process or to attempt to influence the information provided at the hearing.

If you have any questions about this case, contact the Office of Judicial Programs at 753-4725.

Sincerely,

Patricia Cordner
Coordinator of Judicial Programs

Enclosures

pc:RHD
   File



# Cortland

State University of New York College at Cortland

■ *Office of Judicial Programs*

## NOTIFICATION OF ADMINISTRATIVE HEARING (JRB) DECISION

Case # AH-014-98F
December 8, 1998

Rosevelt Beal
Redacted
P.O. Box 875
Dryden, N.Y. 13053

Dear Mr. Beal,

This letter is to inform you of the decision of the Administrative Hearing (JRB level) held on Dec. 1, 1998. At the hearing, you entered a claim of not in violation of A03, <u>Disorderly Conduct</u>(3) and C01, <u>Harassment</u>(3).

A summary of the hearing is as follows:

You stated that with regard to the incident involving your tardiness, you recall walking in late and having Dr. Best state that, " I am sick and tired of you coming in late." You said that you responded by saying you were sick and tired of it as well. You added that the entire confrontation took place in the classroom. You indicated that you are arriving late due to the class you have before Dr. Best' class. Finally, you said that you did not believe you were extremely late.

With regard to the incident on Oct. 21, 1998, you believed that the test question format was not fair and violated several New York State statues. You believed that the test was ambiguous and you stated that you were going to file a grievance. You said your voice was not loud and you were not agitated. You believed that Dr. Best was loud and that you had a right to question your grade and the test format. You stated to Dr. Best that, "You are not a "Honey Bear" and she responded, "Neither are you." You indicated that you were only questioning the test and format and stated you were never threatening. Finally, you said when she asked to leave her office you did so quickly.

On Nov. 23, 1998, you received an F on a paper that you had written for Dr. Best. You felt that you deserved a better grade. You stated that you waited to talk to Dr. Best but she left while you were standing in the room. You indicating that you went out the doors to Old Main and were standing in the doorway near the steps. You told Dr. Best that you thought that the paper was worth at least a D- and she knew it. You stated that Dr. Best responded, "I know no

P.O. Box 2000  Cortland. New York  13045-0900
Phone: (607) 753-4725 ■ Fax: (607) 753-2808



such thing." You then said you threw your hand up over your head like a wave and said, I will see you later in your office. You said that Dr. Best said you would not see her unless someone else was present. You then said I will see you later in your office or see you in court. You added that you said, "your retirement will be mine." I'll get you in court. You also said you called her a "Racist Cracker." Finally, you said that you were discriminated against and that Dr. Best did not like you.

Dr. Best stated that you were chronically tardy, she said that the entire confrontation took place out of class. She said that you followed her down the hall arguing all the way. She said she asked where your class was that made you late. She did not believe that having that class should cause a problem for you. She said you got angry and said she should change her watch to fit your watch. She said you were agitated and irrational.

On Oct. 21, 1998, Dr. Best said that you told her that you wanted to go over your exam to see why you did not do well. Dr. Best said you came into the office and criticized the test format and told her that she previously told the class that the questions were ambiguous, unfair and violated the N.Y. State Education Laws. She said your voice got loud and you yelled that you were going to file a grievance. She added that you said she should change the format. While you were in her office, you stood up in a threatening and intimidating manner. She said you went on to say she was in collusion with all of the "A" students and that she knew about their philosophy. She added that you were standing between her and the door arguing loudly, causing her not to feel safe. She stated that no matter where you were in the room you were between her and the door, based on how the room is designed.

On Nov. 23, 1998, on the steps of Old Main while standing with other students, Dr. Best said you approached her and said in a very loud and angry tone that the exam you had been given an F on was worth at least a B- and she knew it. She stated that you came out the door moving fast and were very angry. She said you were shouting and threatening. She stated that you called her a 'racist' which she believed were fighting words. She continued by saying that you shouted that you would have her ass have her job and take her to court. She said you shouted loudly over her words in a menacing manner then went into the building.

Four witnesses testified that they were standing with Dr. Best outside of Old Main when you approached them complaining about your grade. All of them but one heard you shout and yell that Dr. Best was a racist and that her retirement would be yours and you were going to take her to court. They also said that you shouted over Dr. Best's words saying you would have her job. They also stated that even though Dr. Best said she would only see you in her office with someone else that you were still coming to her office. When asked, all of the witnesses said that you were loud, angry and very agitated. One witness could not hear specifically every word you said but indicated you were angry and called her a racist and were complaining about your grade. Everyone including you agreed to the words you used.

I believe that in all of these cases your behavior was loud and disruptive to Dr. Best. In all cases other individuals were in close proximity to you during these confrontations who were



also disturbed. On two occasions you followed Dr. Best down the hall shouting in a loud tone. In her office you demanded her to change her tests and argued heavily with her after being told the tests were proper and were not going to change. I believe that in all of these situations you were agitated and very loud which clearly is harassing behavior. On Nov. 23, 1998 five individuals heard you call Dr. Best a racist and heard you say that you would have her job, take her to court and get her retirement. All five also said you were loud and threatening.

The Code of Conduct states under Harassment section C 1 actions which are intended to annoy and/or alarm another. These include but are not limited to: **A.** Attempting or threatening to subject another person to unwanted physical contact, **B.** Following another person in or about a public place or places, **C.** Initiating or attempting contact by any means with no purpose of legitimate conversation, **D.** Directing obscene language or gestures at another person or group of people, **E.** Directing verbal abuse at another person because the individual is carrying out duties and responsibilities associated with her/his role as faculty, staff, or student staff at Cortland.

Clearly, I believe that your behavior intended to annoy and/or alarm. You followed her several times and you directed verbal abuse at her as she was attempting to carry out her duties and responsibilities assumed with her role as a faculty member.

After carefully reviewing all of the information, I have determined that you are in violation of A03(3), Disorderly Conduct, and C01(3), Harassment. As a result of my findings, the following sanctions will be imposed:

1. Effective immediately, I am recommending to the Vice-President for Student Affairs that, you are to be suspended from the State University of New York College at Cortland through Dec. 1999. During this period of time, you are to be restricted from all SUNY Cortland grounds, facilities, classes, activities, or related functions. This recommendation will be reviewed by the Vice-President, and you will be notified of his decision.

2. Should you return to SUNY Cortland, you will remain on Disciplinary Probation through your graduation.

3. Should you elect to return to SUNY Cortland, you will be required to provide documentation that you have received counseling to find alternative methods of dealing with your anger.

SUNY Cortland is an institution of higher learning with a mission to educate students. The disrespect you showed for Dr. Best is highly inappropriate. Your behaviors toward her and your fellow students was very offensive. In this community, everyone has a right to work and live in an environment that is free from intimidation and hostility. I certainly hope you will utilize this time away from Cortland to reexamine your goals for the future and develop more appropriate strategies to deal with people.




If you should have any questions concerning this, contact the Office of Judicial Programs, please don't hesitate to contact me.

Sincerely,

Patricia Cordner
Coordinator of Judicial Programs

pc: File
    Franco
    RHD

# Cortland
## State University of New York College at Cortland

**Political Science Department**

Oct. 21, 1998, 5:15 PM

To the best of my recollection, on or about 2:45 PM, Oct. 21, 1998, Rosevelt Beal entered my office during my office hours, sat down, and said he wanted to talk to me. I said, About the exam? He said, Yes, and proceeded to go through his notebook/folder looking for the exam which I had returned to him, on Monday, Oct. 19th. I assumed that he wanted me to go over it with him, and to ask me for advice on improving his performance in the future. My assumption was wrong. While he was searching for the blue book, he started by saying that the exam format was, as I had told the class, ambiguous and unfair. Since this was false, I corrected him saying that I had told the class no such thing. Instead, I had told the class that the second question was the more difficult question, one that required a more subtle and sophisticated analysis. During the conversation that followed, Rosevelt's manner, body language, and voice were, in my considered judgment, menacing.

In an angry voice, he told me that the format of the exam violated the New York State education laws. I asked him what specific law or laws the format violated. He was unable to provide me with that answer, though he said he had it in his files and would give me a copy. He told me that unless I changed the format of the next two exams, he would file a grievance against me. I stated that it was his right to file a grievance. I stated further that I would not change the format of the next two exams. I informed him that I had used the same format for 25 years with success, and I was not going to change it. I pointed out that the class as a whole had done very well on the exam, and that there were a record number of A's in the class. He became more and more agitated. He <u>demanded</u> that I change the format of the exams. He did not raise his hand against me. He did raise his voice, and I considered his manner and his language in response to be intimidating and threatening. Nonetheless, I spoke to him calmly but firmly.

He continued to heatedly argue that I was in violation of the New York State education laws, that he had a right to charge me with the violation. I said that he had a right to inform me of his opinion, and that I had listened and disagreed. I told him again that his recourse was to file a grievance against me. His manner became more agitated. Furiously, he declared that he knew everything about the philosophers. I became quite alarmed. He asked if other students had come to my office to complain about the exam. When I answered No, his manner and his words became even more

 

agitated and insulting. At one point, he seemed to be suggesting
that I was involved in some sort of conspiracy or collusion with
other students, with A students. I began to feel quite unsafe. I
rose from my seat indicating the meeting was at an end. Rosevelt
was between me and the door. I actually felt fear. He did leave my
office. If he had not done so, I would have reached for the
telephone and called for help. *The meeting was prescheduled and I was seated up*

This occasion was not the first time Rosevelt confronted me in an
improper manner. Approximately two weeks earlier, he followed me
out of class and out of the building because I had chastised him
about his continual tardiness. As he followed me, he spoke to me in
such an angry and irrational manner that I finally turned and
walked abruptly away from him and back into the building where I
knew I could find help more immediately.

After Rosevelt left my office on Oct. 21, I walked immediately to
the Department office where I asked our Secretary to tell the
Chairman, Jerry O'Callaghan, that I needed to speak with him
immediately. He came to my office as soon as he was free, and I
reported the meeting to him in some detail. He advised me to write
this statement. Subsequently, I went to Dean John Ryder's office
and reported the same thing to him. He also advised me to write
this statement, and to report the incident to Public Safety.

I have taught at this College for 25 years, and there has been only *I never heard anything about this until the November incident* one
one other occasion when I reported a student to a former Dean, and
then only for extreme impertinence. On that occasion, I did not
think the student was physically threatening. I have been a teacher
for 41 years, and I am not a timid woman. I have not had any
discipline problems in any of my classes. If anything, I find that
most students have a very healthy respect not only for my knowledge
of the subject matter but for my position as their professor. On
this occasion, I do think that Rosevelt's manner, body language and
voice were threatening. It was clear to me that he thought he could
intimidate me because I am a woman. I found his manner to be
insolent, and deliberately threatening.

I do not and will not tolerate a threatening manner from students--
or from anyone. There is no reason why I, or any female, or, for
that matter, any male member of the faculty, should be subjected to
the kind of incident I have described. Terror tactics are not
acceptable on a university campus or in civil society.

*Judith A Best*

Judith A. Best
Distinguished Teaching Professor





# Cortland

State University of New York College at Cortland

■ *Political Science Department*

November 23, 1998

Patricia Cordner
Coordinator of Judicial Programs
SUNY Cortland
PO Box 2000
Cortland, NY 13045

Dear Ms. Cordner:

Roosevelt Beal threatened me on Monday, November 23, 1998 - approximately 10:55 a.m. on the steps of Old Main.  Four of my students were within hearing distance - Jessica Swan, Jennifer Novesky, Danielle Dubois and Tamara Hammond.  Roosevelt was shouting and threatening. He said his exam was "worth at least a B-" and that I "knew it." He called me a racist. When he said he'd see me in my office, I told him I would not see him in my office and would only see him with someone else present.  He continued to shout over my words. He said he'd "have my job," he'd have "my ass," he'd take me to court. His language and voice were insolent, angry and threatening.

Sincerely,

Judith a Best

Judith A. Best
Distinguished Teaching Professor

cc: Public Safety

 

P.O. Box 2000  Cortland, New York  13045-0900
(607) 753-4105 ■ FAX: (607) 753-5979



Danielle M. DuBois
732 Casey Tower
Cortland, NY 13045
(607) 753-4932

To whom it may concern:

On November 23, 1998, at approximately 11:00, I was standing outside with Dr. Best and three other classmates. In class we had received our graded mid-term examinations. Apparently, Roosevelt Beal was not satisfied with the grade he received.

While standing outside, he approached Dr. Best and expressed his grievance with her. He then proceeded to tell her, with a hostile tone, that he would be in her office. Dr. Best told him that he would not be in her office. However, Roosevelt continued to persist. Roosevelt began to threaten Dr. Best, saying, "Your retirement will be mine!" Roosevelt proceed to threaten that he was going to bring Dr. Best to court. As he was walking away he called Dr. Best a "racist."

Judging objectively, Dr. Best handled herself with respect toward Roosevelt. She did not raise her voice, and she kept her tone very low. Roosevelt, however, was extremely hostile toward her. I feel he was very out of line to talk to Dr. Best in such a manner.

If I am needed for another statement, feel free to get in contact with me. Thank you very much for time.

Sincerely,
Danielle M. DuBois
Danielle M. DuBois







Jessica L. Swan
134 Gertrude Street. Apt. #1
Syracuse, NY 13203
(315) 472 – 7581


To whom it may concern,

On November 24, 1998 at approximately 10:55 a.m. Dr. Best, three other students and myself were on the front steps outside of Old Main smoking a cigarette after class. Roosevelt Beal came out (in between the doors) to yell at Dr. Best. He was apparently unhappy with the grade he received on our last exam. He told Dr. Best that she was a "racist " and made reference to taking her retirement. He asserted that he would see her in her office and Dr. Best replied that he could see her as long as someone else was there. Mr. Beal's conduct was uncalled for in this situation. He was extremely rude, loud, and unrespectful.

Sincerely,

*Jessica L. Swan*

Jessica L. Swan


NO DatE





November 23, 1998

      This morning at 10:50 am, I was standing outside Old Main with Professor Best and three other students when Rosevelt Beal approached. As he held the front door open, he continued to claim that he deserved a better grade on the Professor's exam, and wanted to speak to her in her office. With a sharp response of no, not alone, Prof. Best continued to listen. Mr. Beal became upset and proceeded by calling the Professor a "racists pig" many times. Mr. Beal also began shouting that he would see her in court, and that her retirement fund would be completely his when he was done with her. At this point, Mr. Beal went back inside, and the Professor went directly to the dean.

                Sincerely,

                  Tamara L. Hammond

***If there are any further questions, please feel free

to contact me here, at home(756-9131), or at work(756-2851ext166)***





November 23, 19  

This morning at 10:50 am, I was standing outside Old Main with Professor Best and three other students when Rosevelt Beal approached. As he held the front door open, he continued to claim that he deserved a better grade on the Professor's exam, and wanted to speak to her in her office. With a sharp response of no, not alone, Prof. Best continued to listen. Mr. Beal became upset and proceeded by calling the Professor a "racists pig" many times. Mr. Beal also began shouting that he would see her in court, and that her retirement fund would be completely his when he was done with her. At this point, Mr. Beal went back inside, and the Professor went directly to the dean.

Sincerely,

Tamara L. Hammond

To:  Lt. Bill Pesesky
From:  Jennifer Novesky
Re:  Incident on 11/23/98, at 11 a.m.
CC:  Dr. Judith Best, Political Science

This is the account of the incident that took place by the front door/steps of Old Main, this morning, 11/23/98 at 11 a.m., as I saw it.

While smoking a cigarette with Dr. Best and three other students, I , Jennifer Novesky, heard Roosevelt Beal shout out from inside of Old Main, to Dr. Best, "I'll see you in your office." Dr. Best responded, "No you will not unless someone else is present." Roosevelt raised his voice and yelled again that he would see her in her office and began to say that Dr. Best's retirement was his, she was racist, and he would see her in court. The tone in his voice was very threatening and disrespectful.

Jennifer Novesky



663

CS-14
C2263-681

STATE UNIVERSITY OF NEW YORK
AND REGULATORY INCIDENT REPORT

| 1. Campus: | 2. Report type: | | 3. Date of report: | Mo. | Day | Year | File ID: | Year | No. | Sequence |
|---|---|---|---|---|---|---|---|---|---|---|
| 28 | 1 | A) New  B) Change  C) Delete  A | | 1 | 0 27 | 9 8 | | 9 8 | 34 | |

5. Area of activity:
A) Safety Maint.  B) Order Maint.  C) Aid & assist incap. person  D) Calls for assistance  E) Escort service  F) Special assign.  G) Animal  H) Alarm-fire box  I) Alarm-other  J) Other (specify) [A]

6. N  of recipient (LAST, FIRST, MIDDLE)
B|E|S|H|   J|U|D|I|H|N

7. Recipient of services:  A) Single  B) Multiple [A]  If multiple, number:

Local address: History Dept

8. Recipient status: A) Patient  B) Student  C) Faculty/Staff  D) Visitor  E) Patrol Officer  F) Other (specify)

_____  Tel:

9. Sex  A) Female  B) Male [A]   10. Date of birth: Mo. Day Year

Home address: _____

11. Nature of response:  A) Emergency  B) Prompt  C) Routine [C]

12. Additional personnel assistance rendered:
A) Yes  B) No [B]  – if yes, number:

13. Name of reporter: (LAST, FIRST, MIDDLE)  Tel:
| | | | | | | | | | | | | | | | |

14. Status of reporter: A) Faculty/Staff  B) Recipient  C) Patrol Officer  D) Other (specify) [A]

Address: _____

15. Did reporter witness incident  A) Yes  B) No

_____  Tel:

16. Are there witnesses:  A) Yes (names in narrative)  B) No.

17. General area of occurrence: A) Dorm  B) Dining hall  C) Student union  D) Academic area  E) Gym  F) Admin. Bldg.  G) Maint. area  H) Road  I) Parking lot  J) Grounds  K) Hospital  L) Other (specify)

18. Specific area of occurrence:

19. Building code: _____ Building Floor

Room: _____

| 20. Date of incident | Mo. | Day | Year | 21. Time of incident (use 24 hour clock) | A) Actual  B) Estimated  C) Unknown |
|---|---|---|---|---|---|
| | 1 | 0 2 | | | |

22. Incident  A) Job related  B) Academic  C) Athletic  D) Other (specify)

23. If report of incident came through office, method:
A) Person  B) Phone  C) Letter  D) Other (specify)

24. W____ ed: Mo. Day Year Time  1 0 21 9 8 1 H 45
25. Radio dispatch: A) Yes  B) No [B]
26. Time of arrival at scene:   Time scene cleared:

27. The following agency responded to scene:
A) Fire dept.  B) Police dept.  C) Ambulance  D) Power company  E) Other (specify)

28. Number of people involved, if crowd or evacuation:

29. Extent of evacuation:  A) Partial  B) Full

30. If auto involved: (use MV104A for motor vehicle accident)
A) Failure  B) Abandoned  C) Lock out  D) Other (specify)

31. Was auto towed:
A) Yes, by campus  B) Yes, other (specify)  C) No

32. Personal property:  A) Lost  B) Found

33. Estimated value of property:

34. Does finder wish to file a claim for this property:  A) Yes  B) No

35. Finder's signature:  Mo. Day Year

36. Disposition of property: (Sec. 251-258 Personal Property Law)
A) Return to owner  B) Return to finder  C) Other (specify)

NARRATIVE: Give a brief description of who, what, when, where, how, etc.

Dr. Best reported an incident involving student
Roosevelt Beale. See attached letter

37. Were existing procedures adequate for response to incident:
A) Yes  B) No (if no, explain in narrative) [A]

Report completed by:  Title  Date

38. Was physical plant notified of any unsafe conditions:
A) Yes  B) No  C) None evident [C]

Supervisor's signature: Peresley  Title Lt  Date 10-27-98

## Section Ten: Due Process Rights

Students should expect that disciplinary proceedings will be handled fairly. All SUNY Cortland students accused of violating the Student Code shall be granted the following due process rights:

A. A student has the right to a hearing by an unbiased judicial body.

B. A student has the right to have an advisor present at the hearing.

C. A student has the right to written notice of the charges which indicates the time and place of the hearing. Proper written notification shall be defined as the delivery of mail to a student's on-campus mailbox, or delivery by the U.S. Post Office (with Certificate of Mailing) to a student's local off-campus address. Students shall be held responsible for the contents of mail for which they have refused receipt.

D. A student has the right to receive a copy of the written report(s) stating the circumstances and allegations involved. This information shall generally be given to the student at the time that they receive notification of the time and place of the hearing.

E. A student has the right to object to a Board member or Administrator who is serving in the capacity of judicial body. The validity of the objection will be determined by the Board's advisor or Administrator at the time of the hearing. In Administrative hearings, the objection must be stated in writing at least one full school day before the hearing.

F. A student has the right not to present information against herself/himself.

G. A student has the right to hear and respond to all information presented against her/him. This includes the right to question all parties through the judicial body.

H. A student has the right to present information and witnesses in her/his own behalf. The number of witnesses who may be called will be determined by the Board or Administrator hearing the case.

I. A student has the right to written notification of the results of a hearing no later than ten school days after the hearing.

J. A student has the right to appeal the outcome of a hearing, except in cases of accepted Residence Hall Director decisions. A student must be informed of their right to appeal, and the process by which to do so.

## Section Eleven: Victim's Rights

When a member of the SUNY Cortland community has been the victim of an alleged act of misconduct which violates the physical and/or mental welfare of an individual, the victim should expect that the judicial system shall respond in a caring, sensitive manner which allows the victim to utilize the judicial process unimpeded, while still maintaining the rights of the accused student. In cases including but not limited to sexual assault, physical assault, hazing, and harassment, the following rights shall be provided to victims of alleged offenses:

A. A victim has the right to be treated with dignity and compassion by the judicial body, and by all persons involved in the disciplinary process.

B. A victim has the right to information pertaining to the campus judicial process and appropriate referrals for information on the criminal process.

C. A victim has the right to information pertaining to counseling assistance available to her/him.

D. A victim has the right to assistance throughout the judicial process, including the right to have an advisor present at all proceedings.

E. A victim has the right to all due process protections provided to accused students, including the right to written notification of a hearing, the right to hear all information presented, the right to present information and witnesses, the right to verbal disclosure of the results of a hearing, and the right to appeal imposed sanctions (see Section Fourteen).

F. A victim has the right to testify from another location as long as it does not infringe upon the rights of the accused student to have a fair hearing.

G. A victim has the right to have any unrelated past behavior excluded from the hearing process. The judicial body shall determine what constitutes unrelated behavior.

H. A victim has the right to submit a written impact statement to the judicial body which will be considered only in sanctioning, should there be a finding of violation against the accused student.

14



SUPREME COURT STATE OF NEW YORK
COUNTY OF CORTLAND

In the Matter of the Application of
Rosevelt Beal,

               Petitioner,

For a Judgement Pursuant to Article 78 of the
CPLR,

        vs.

Judson H Taylor, as President, Raymond D. Franco
as Vice President for Student Affairs, Patricia Cordner
as Judicial Coodinator, Dr. Judith Best as Political Science
Professor of the State University
of NewYork at Cortland.

               Respondent

Verified Petition
Index No.
RJI No.35064

*Please see corrections at 17a Highlight are the altered portions*

Petitioner alleges:

   1. Petitioner, Rosevelt Beal is the student residing at 85 ½ Chelsea Dr., Cortland, in the State of New York and that this is a proceeding pursuant to Article 78 of the Civil Practice Law and Rules.

   2. The petitioner is 38 years of age and was and still is a student at the State University of New York at Cortland.

   3. Upon information and belief, and at all times mentioned, the respondent, Judson Taylor was and still remains President at Cortland University, which was and still is an accredited university within the State of New York, for the enrollment of undergraduate and graduate students seeking college or post-graduate college degrees. In addition the respondent and constituents are subject to all applicable state and federal laws and regulations.

## FACTS

   4. I, the student Rosevelt Beal approached my Political Theory instructor, Dr. Judith Best on campus, on the outside steps of the Old Main building. My sole intention was to discuss a failing test grade she had given me. In a very low, cordial tone of voice I specifically stated, "Dr. Best I think you know I deserved at least a D- on this test".

   5. Dr. Best responded loudly shouting " I know no such thing". At that very moment realizing it would not behoove me to stand there, and as to avoid embarrassment and an argument the petitioner waved goodbye while walking toward the Old Main doors.

2



6. As the petitioner proceeded toward the doors and waving I replied in a normal tone of voice , "I'll talk to you later in your office." Dr. Best followed behind me loudly shouting to the effect of, "You'll do no such thing unless your escorted by someone."

7. Not understanding what she meant nor why she was yelling, once inside the double doors the petitioner turned around. Dr. Best was holding the door while continuing to shout.

8. In a kind of suave manner yet still a in normal tone of voice the petitioner retorted, "I will see you in your office, then I will see you in court, your retirement will belong to me, racist."

9. At that point I, the petitioner turned and walked off.

10. Petitioner believes that Dr. Best's actions were racially motivated due to respondent's treatment whenever petitioner raised questions in class lectures, also due to respondent's comments on homework assignments. Annexed exhibit B.

11. In addition once inside of the double doors there are two offices, one on each side of the entrance less than 10 feet away from the incident in which respondent alleges petitioner was shouting loud enough to be heard half way to the Miller building, approximately the width of a city street.

12. Secondly classes exchange at the time of the alleged offence.

13. The above incident resulted in my being charged with 3 counts of AO3 Disorderly Conduct and 3 counts of CO1 Harassment of the Code of Student Conduct.

14. Petitioner was unaware of these charges until Nov., 23rd 1998, when Officer Pesesky of Cortland Security personally informed me after my last class at approximately 2:50. Annexed exhibit C.

15. Petitioner was restricted from all SUNY Cortland facilities on Nov., 24th 1998 pending an administrative hearing.

16. In connection with the above I was not allowed counsel, but restricted to an advisor who was university staff that was not permitted to give any input. This in itself is in violation of my constitutional rights.

17. In connection with the above an administrative hearing was conducted on Dec. 1st from which I was dismissed before completion for merely questioning a witness. In addition no one was sworn in at this hearing. A tape of this hearing is annexed hereto exhibit A.

18. Petitioner attempted to use the Bible as an instrument to place Dr. Best under oath, but the Judicial Coordinator ruled the tactic as inappropriate.

19. As a result of this hearing a decision was rendered on Dec. 8th, 1998 by the Judicial Coordinator, Patricia Cordner recommending to the Vice-President of Student Affairs that I be placed on suspension until Dec. of 1999, and then pending documentation that I receive counseling.

20. This decision also claims that the petitioner displayed offensive behavior toward his fellow students as well as restricted the petitioner from all Cortland University facilities. Annexed exhibit D.

21. The decision rendered on Dec. 17,1998 by Dr. Franco upheld the decision made by Patricia Cordner.

22. As a result of this suspension the petitioner was not allowed take final exams for the fall semester nor was petitioner allowed to cross- register for remaining 9 credits to complete B.A. degree through the Albany Semester Program. Annexed exhibit E.

3





36. Cortand University has failed to grant the petitioner a fair assessment of his GPA in that during the last 2-3 weeks of the semester he was unjustly suspended and not allowed to take his final exams although he was allowed to hand in his remaining homework assignments. As a result the petitioner received grades less than his academic performance displayed, in fact he was deprived of 12 credits for which he toiled for an entire semester. The petitioner was also deprived of an internship in which he would completed his remaining 9 credits to receive his BA degree, not withstanding the valuable experience related to his career and a $2,000 stipend, and a delay in his entry into law school at the age of 38.

## Fourth Cause Of Action

37. Cortland University has failed to render a just decision in that all the evidence presented in their behalf is unsubstantiated as well as conflicting and contradicting. All witnesses presented by the respondent testified to a different occurrence of events, one even contradicting herself first stating that the petitioner was whispering and speaking in a low tone and in the next instance a supposed loud tone. Neither witness could state what was being said with the exception of something to do with a grade which could easily be perceived by anyone who witnessed my showing Dr. Best my test grade after a class in which other classmates also received their test. These witnesses were in fact classmates.

38. Moreover one witness claims the petitioner called Dr. Best a "racist pig" others claim he just called her a racist. This could have easily been discussed by the parties involved since they all had a daily routine of smoking a cigarette after class.

## Fifth Cause Of Action

39. The Cortland Administration has further denied the petitioner due process in that he was not allowed to question or discuss with other students and administrators that would have been vital to his defense. Dr. Best claims that she went directly to Dean Ryder's office to report the alleged offence yet Dean Ryder was not present at the hearing nor was the petitioner allowed to discuss the matter with him or Dr. O'Callaghan who Dr. Best claims to also be involved with her reporting of one of the alleged offences. In addition I was unaware of any reports of harassment or disorderly conduct until Nov. 23rd, 1998 since one incident was supposedly reported on Oct, 21st, 1998 and the other date appears to be uncertain.

## Sixth Cause Of Action

40. Throughout the hearing I was inappropriately interrupted by the Judicial Coordinator. The coordinator acted arbitrarily and capriciously in such a manner that I have been denied due process law and a right to procure a college education and academic career. In pertinence to the above I have been placed in a predicament that has delayed my graduation, and my entry into grad-school; not withstanding the mental stress. In addition to this I have been placed on suspension in my last three weeks until Dec. of 1999 at Cortland University due to these bogus charges. Not withstanding the fact that these charges have not been proven and if they had been true it seems as though Cortland City Court would have been the respondent's recourse.



G33

41. On Jan. 4th, 1999 I was to begin an internship with the Albany Semester Program in Cortland University would not allow me to cross- register to attend this internship; a loss of $2,000 in wages, not withstanding I was unemployed at the time and have only been able to secure on call and temporary employment.

42.. The acts of Cortland University , its administration, and its agents and employees thereof

1.     Are such as to be illegal, arbitrary, capricious and in violation of my rights as a student under     the Constitution of the State of New York and of the United States. These acts have been viewed as no more than an attempt to break the petitioner's spirit and to destroy his life.

43. This proceeding is brought on by a petition to compel reinstatement because I have been deprived of an education, a fair hearing and a internship by the very laws of the respondent University. Moreover I am being deprived of the right to complete my degree in a timely fashion, in that I have not been permitted to take the final exams from fall of '98 and to cross - register for the remaining 9 credits.

44. By virtue of the foregoing, the respondents have violated 14 U.S.C.S. section 1.

     WHEREFORE, it is respectfully requested that this Court enter a judgement directing the respondent to reinstate the petitioner, thus allowing the petitioner to take the final exams from the fall semester of 1998. Also to be permitted to cross-register that I might earn the remaining 9 credits at another institution. Moreover to be reinstated to good student status, and the $2,000 lost from the internship together with such other and further relief as the Court deems necessary and proper.

Dated: February 25, 1999      By:     *Rosevelt Beal* / Rosevelt Beal
                                         Pro se
                                         P.O. Box 875 Dryden, N.Y.13053
                                         607-758-9518

STATE OF NEW YORK
COUNTY OF CORTLAND      SS:

Rosevelt Beal, being duly sworn, deposes and says he is the Petitioner in the above- entitled proceeding; he has read the foregoing petition and knows the contents thereof; the same is true of his own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters, he believes them to be true.

                                    *Rosevelt Beal*
                                    Rosevelt Beal

Sworn to before me
on April 14, 1999.
*Phyllis J. Adams*

7

PHYLLIS I ADAMS
Notary Public, State of New York
No 04AD4876913
Qualified in Cortland County
Commission Expires December 29, 2000

(20)

634

Please note- this is the correct account of events that transpired at SUNY Cortland.  Somehow the petition dated 1999 had been altered .  Below is a more acurate accound of what took place. took place and what was testified at by the plaintiff at the administrative hearing.. Also note that the first written statement by Dr. Best dated 10/21/98 was never brought to the attention of the plaintiff until the day he was placed on suspension. The plaintiff was totally unaware of any complaint what so ever. Please also the date of the report from Campus Safety.

After class the plaintiff approached Dr. Best outside of the doors of the Old Main Building. He quietly and cordially inquired about his grade, stating Dr. Best don't you think I deserved at least A D- on this paper?" Dr. Best became irate and exclaimed "I knew no such thing". At that very moment before she even completed her statement I started walking off back into the Old Main building. As I was walking I waved to her and in a calm tone stated " I'll just talk to you later in your office".  Dr. Best came walking behind me nearly stepping my heels, in an irate tone, "you'll do no such thing". By this time I was in the middle of the corrider with her still behind me. Please note there are numerous offices to include Dean Ryder's Office less than 5 feet away. At this point I turn around thinking to myself- what is wrong with this lady? When i faced her i calmly suavly stated You know "I'll see you in your office, i'll see in court if need be, this is racist". I then turned back around and exited out through the doors on the other side of the building. That was the extent of it.  It is what was testifeid at the administrative hearing, so there is no way the petition would have contained any thing other than the above. Unless of course it had been altered.

In regards to the final exams they were in fact take home projects. Even so if they had not been the percentage of the final exam would not have been enough to fail the plaintiff. The plaintiff has been in touch with one Professor- a Ms. D'Amico who now works at Syracuse University. I had a few extensive discussions with her regarding various topics in class. However she coud only assist me in referring the issue to Dr. O'Callahan.

Regarding the administrative hearing the court was also sent a copy of the plaintifff's audio tape. The court transcipt was not totally acurate as some names were either not stated or  not audible. The plaintiff also is still of possession of a copy however it may not be in the best condition.

Rosevelt Beal

_Roswelt Beal_

6/4/16

1

(20A)

PHILLIP R. RUMSEY, JSC

After an administrative hearing, petitioner, a student at the State University of New York at Cortland, was found guilty of several violations of the Code of Student Conduct, arising from three incidents in which he engaged in heated discussions with one of his teachers, and allegedly acted in a threatening or aggressive manner by, inter alia, following her or loudly insulting her.  As a result, petitioner was suspended from attending classes or participating in University activities through December 1999.  The letter decision of the University's vice-president, Raymond D. Franco, further indicates that, should petitioner apply for readmission after the period of suspension, he would need to submit evidence that he had obtained counseling "to find alternate methods of dealing with [his] anger" (Letter decision of Raymond D. Franco, dated December 17, 1998 [unlettered exhibit to Petition]); moreover, if his application were to be accepted, petitioner would "serve on disciplinary probation * * * through graduation" (id.).

Mr. Franco's decision, in which he adopted the recommendation of the judicial coordinator who presided over the administrative hearing, was upheld by respondent Judson H. Taylor, as President of the University, in a letter dated January 4, 1999.  Petitioner thereafter commenced this CPLR article 78 proceeding, in which he challenges the determination on several grounds.  Respondent Taylor answered, and oral argument was heard on June 17, 1999.



Substantive Decision

Turning to the merits of the decision itself, petitioner's arguments that the decision was arbitrary or capricious essentially boil down to disagreements with the manner in which the fundamental credibility questions were resolved. While petitioner highlights certain portions of the testimony that could be viewed as casting doubt on the veracity of the other witnesses' assessments of his behavior during the incidents in question, and thus to support a finding that the charges were unfounded, there is nevertheless ample other evidence that supports the contrary conclusion reached by the judicial coordinator (and upheld by respondent). These conflicts merely posed credibility questions, which were resolved in the complainant's favor. Given the record as a whole, respondent's decision to reject petitioner's account, and to credit the testimony of the other witnesses - which, aside from a few minor discrepancies, was essentially consistent - cannot be viewed as arbitrary or capricious. And, putting aside such issues of credibility, or the weight that should be accorded conflicting evidence (matters that are, for the most part, beyond the scope of this court's review [see, Matter of Ackerman v Ambach, 142 AD2d 842, 844; Kwiatkowski v Ithaca College, 82 Misc 2d 43, 47]), the record discloses substantial justification for each of the findings of misconduct. Accordingly, petitioner's contention that respondent's findings and conclusions are arbitrary, capricious, and without rational basis, must be rejected.

Respondent's Objections

As the responding papers note, petitioner has submitted no proof of service upon any of the respondents named in the petition except respondent Taylor. Indeed, petitioner has not suggested that such service was effected. Accordingly, jurisdiction has not been obtained over the other respondents. Nevertheless, it does not appear that those persons are necessary parties, such that their non-joinder would mandate outright dismissal of the petition, even as against respondent Taylor (hereinafter respondent) (cf., Matter of Mary M. v Clark, 100 AD2d 41).

Respondent also correctly argues that insofar as the petition can be construed as raising objections to certain grades petitioner received, due to his suspension or otherwise, those issues are not properly before the court, because petitioner has failed to exhaust his available administrative remedies. Accordingly, the decision shall be limited to addressing petitioner's procedural and substantive challenges to the disciplinary determination itself.

Due Process

Petitioner's assertions that he was denied due process are unavailing. "'Whenever a governmental body acts so as to injure an individual, the Constitution requires that the act be consonant with due process of law. The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved'" (Matter of Mary M. v Clark, 100 AD2d 41, 43, quoting Dixon v Alabama State Bd. of Educ., 294 F 2d 150, cert denied 368 US 930). As in Mary M., petitioner was



served with written notice of the charges against him; was in possession of a copy of the Code of Student Conduct, outlining the particular conduct for which discipline could be imposed; was afforded an opportunity to hear and confront the evidence against him, and to present his own side of the story; was permitted to have an advisor of his own choosing present at the hearing; was presented with a written decision, explaining the reasons for the findings reached and the sanction imposed; and was accorded the benefit of an administrative appeal and review.  This procedure was more than adequate to satisfy the requirements of due process in the collegiate setting (Matter of Mary M. v Clark, supra, at 44; Matter of Rauer v State University of New York, University at Albany, 159 AD2d 835, 836).

Equally unpersuasive is petitioner's contention that his expulsion from the hearing room - after he repeatedly made inappropriate remarks about the sexual orientation of one of the other participants - was improper, and rendered the proceeding patently unfair.  This action was taken only after petitioner had been warned not to continue making such comments, and was necessary to maintain order and decorum in the quasi-judicial setting, and to protect the rights of the other participants.  In any event, the transcript reveals that petitioner had ample opportunity, prior to his removal, to testify as to his view of the events in question, and to highlight the inconsistencies and conflicts in the testimony of the other witnesses, which formed the basis for his defense. Thus, his ejection from the proceeding did not substantially impair his right to defend himself against the charges.



Nor was petitioner's opportunity to cross-examine respondent's witnesses so circumscribed as to violate his right to a fair hearing; again, the limitations that were imposed struck a reasonable balance between petitioner's right to defend himself, and the need to avoid argumentative, repetitive questioning and badgering of the witnesses (see, Matter of Amato v State of NY Dept. of Health, 229 AD2d 752, 754, lv denied 89 NY2d 801; cf., Matter of DiRienz v Constantine, 151 AD2d 953, 955). Lastly, the fact that respondent did not accept petitioner's offer of a copy of the audiotape of the hearing, prior to rendering his decision, is of no moment, for he was in possession of the judicial coordinator's summary of the hearing, as well as all of the written evidence in the record, including the witnesses' statements. Taken together, these items provide ample basis for an appellate body to conduct a substantive review of the decision being challenged. Moreover, the appellate process conformed to the precepts of the Code of Student Conduct, which expressly provides that "[a]ppellate bodies shall only consider written information that is available at the time that a request for an appeal is being reviewed" (Code of Student Conduct, Section 14 [A] [unlettered exhibit to Petition] [emphasis added]).  See also, Forrest v Ambach, 93 AD2d 965, 966.

In sum, there is no basis upon which to conclude that petitioner was denied Constitutional due process, or that the University failed to comply with its own procedural rules and regulations (see, Tedeschi v Wagner College, 49 NY2d 652, 660).



-5-

Petitioner's remaining contentions have been considered, and found meritless, and the petition is hereby dismissed.

This decision shall constitute the order of the court.


Dated:      June 23, 1999
            Cortland, New York

                              HON. PHILLIP R. RUMSEY
                              Supreme Court Justice



# UNITED STATES DEPARTMENT OF EDUCATION

### OFFICE OF MANAGEMENT

JAN --4 2012

Mr. Rosevelt Beal
409 Rail Road Street
Odum, Georgia  31555

Dear Mr. Beal:

This is to respond to your November 22, 2011, letter to this office in which you allege that the
State University of New York at Binghamton (University) violated rights afforded you under the
Family Educational Rights and Privacy Act (FERPA) when it failed to provide you with access
to your education records in response to your request.  This office administers FERPA, which
addresses issues pertaining to education records.

FERPA is a Federal law that gives students the right to have access to their education records,
the right to seek to have the records amended, and the right to have some control over the
disclosure of information from the records.  The term "education records" is defined as those
records directly related to a student and maintained by an educational agency or institution or by
a party acting for the agency or institution.  Enclosed is a copy of the FERPA guidance document
for eligible students.

Under FERPA, a school must provide a student with an opportunity to inspect and review his or
her education records within 45 days of the receipt of a request.  A school is required to provide
the student with copies of education records or make other arrangements when a failure to do so
would effectively prevent the student from obtaining access to the education records.  A case in
point would be a situation in which the student does not live within commuting distance of the
school.  A school is not required by FERPA to provide or create records that are not maintained
in response to a student's request.  Also, FERPA does not require schools to create or maintain
education records, or to re-create lost or destroyed education records.  Based on the information
in your correspondence, it appears that you live outside of commuting distance to the University,
and it could provide you access by providing you with a copy of your education records or to
make other arrangements for you to inspect and review your records.

You have not provided this office with sufficient information to determine that rights afforded
you under FERPA were violated.  Specifically, you have not provided this office with a copy of
your request for access.  You may wish to contact appropriate University officials (e.g. the
registrar's office staff) to determine the University's procedure for obtaining access to education
records, and specifically whether the University requires students to complete a form in order to
obtain access to education records and whether the University requires students to include
appropriate identification in the request.  In order to exercise your rights under FERPA, we
suggest that you write to the appropriate University official(s) and specify the records to which
you are seeking access.  If after 45 days of having received your request for access the

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering
national educational excellence and ensuring equal access..*



## Pasley, Carolyn

| | |
|---|---|
| **From:** | Virginia Levine [VirginiaL@em.cortland.edu] |
| **Sent:** | Friday, May 05, 2006 4:32 PM |
| **To:** | Pasley, Carolyn |
| **Subject:** | Rosevelt Beal |

Hi, Carolyn. You may be hearing from Sperry Navone. He works in Senator Winters' office. Apparently Rosevelt Beal has contacted his office for assistance in forcing Cortland to grant him the degree to which he thinks he is entitled. Their lack of response has resulted in Rosevelt's calling Senator Winters' office "racist."

Due to FERPA, I was unable to provide specifics, of course. I did suggest that Sperry contact your office for possible guidance.

Thanks.

Ginny

Virginia B. Levine, Ph.D.
Executive Assistant to the President
SUNY Cortland
P.O. 2000
Cortland, NY 13045
Phone: (607) 753-2201   FAX: (607) 753-5993



Date Printed: Feb 10, 2010

# Tompkins Cortland Community College

Office of the Registrar
PO Box 139
Dryden, NY 13053

Page 1 of 2

SID 9768655150

RECEIVED
02-16-10
D. Darden

**Name:** Rosevelt Beal

**Program/Degree/Curriculum:** Under Grad/AS/Liberal Arts Social Science

**Id:** Redacted

**Degree/Date Granted:** AS  May 29, 1997

**Previous Institution:** MOHAWK VALLEY COMMUNITY COLLEGE, NoDeg (T)

**Honors:**
**Cumulative GPA:** 2.329

| Course Id | Title | Grade | Credits | QPnts |
|---|---|---|---|---|
| | Transfer Credits  1001 | | | |
| MOHAWK VALLEY COMMUNITY COLLEGE | | | | |
| ENGL101 | Composition | TR | 3.00 | 0.00 |
| LSRE ELEC | LSRE Elective | TR | 1.00 | 0.00 |

| | Attempt | Earned | Total | GPACrd | QPnts | GPA |
|---|---|---|---|---|---|---|
| Term | 0.00 | 0.00 | 4.00 | 0.00 | 0.00 | 0.000 |
| Cum | 0.00 | 0.00 | 4.00 | 0.00 | 0.00 | 0.000 |

### Spring 1994

| Course Id | Title | Grade | Credits | QPnts |
|---|---|---|---|---|
| DATA105 | SURV OF COMP INFO S | WP | 3.00 | 0.00 |
| ENGL102 | APPROACHES TO LIT | C+ | 3.00 | 6.90 |
| PSYC103 | INTRO TO PSYCHOLOG | B- | 3.00 | 8.10 |

| | Attempt | Earned | Total | GPACrd | QPnts | GPA |
|---|---|---|---|---|---|---|
| Term | 9.00 | 6.00 | 6.00 | 6.00 | 15.00 | 2.500 |
| Cum | 9.00 | 6.00 | 10.00 | 6.00 | 15.00 | 2.500 |

### Summer 1994

| Course Id | Title | Grade | Credits | QPnts |
|---|---|---|---|---|
| GEOG110 | GEOG OF THE AMERIC | D- | 3.00 | 2.10 |
| HLTH207 | DRUG STUDIES | D+ | 3.00 | 3.90 |

| | Attempt | Earned | Total | GPACrd | QPnts | GPA |
|---|---|---|---|---|---|---|
| Term | 6.00 | 6.00 | 6.00 | 6.00 | 6.00 | 1.000 |
| Cum | 15.00 | 12.00 | 16.00 | 12.00 | 21.00 | 1.750 |

### Fall 1994

| Course Id | Title | Grade | Credits | QPnts |
|---|---|---|---|---|
| PARA101 | INTRO TO PARALEGAL | C | 3.00 | 6.00 |

| Course Id | Title | Grade | Credits | QPnts |
|---|---|---|---|---|
| | Fall 1994 | | | |
| PSYC205 | DEVELMNTL PSYC: CH | D+ | 3.00 | 3.90 |

| | Attempt | Earned | Total | GPACrd | QPnts | GPA |
|---|---|---|---|---|---|---|
| Term | 6.00 | 6.00 | 6.00 | 6.00 | 9.90 | 1.650 |
| Cum | 21.00 | 18.00 | 22.00 | 18.00 | 30.90 | 1.717 |

### Spring 1995

| Course Id | Title | Grade | Credits | QPnts |
|---|---|---|---|---|
| ECON101 | INTRO TO ECONOMICS | D- | 3.00 | 2.10 |
| PARA102 | LEGAL RESEARCH & D | D | 3.00 | 3.00 |

| | Attempt | Earned | Total | GPACrd | QPnts | GPA |
|---|---|---|---|---|---|---|
| Term | 6.00 | 6.00 | 6.00 | 6.00 | 5.10 | 0.850 |
| Cum | 27.00 | 24.00 | 28.00 | 24.00 | 36.00 | 1.500 |

### Fall 1995

| Course Id | Title | Grade | Credits | QPnts |
|---|---|---|---|---|
| ENGL201 | FUNDAMENTALS OF SI | B | 3.00 | 9.00 |
| PSYC207 | DEVELMNTL PSYC: AD | B- | 3.00 | 8.10 |

| | Attempt | Earned | Total | GPACrd | QPnts | GPA |
|---|---|---|---|---|---|---|
| Term | 6.00 | 6.00 | 6.00 | 6.00 | 17.10 | 2.850 |
| Cum | 33.00 | 30.00 | 34.00 | 30.00 | 53.10 | 1.770 |

### Summer 1996

| Course Id | Title | Grade | Credits | QPnts |
|---|---|---|---|---|
| BIOL101 | PRINCIPLES OF BIOLO | C- | 3.00 | 5.10 |
| BIOL102 | PRINCIPLES OF BIOLO | D | 3.00 | 3.00 |
| CIS 105 | SURV OF COMP INFO S | A | 3.00 | 12.00 |

*** CONTINUED NEXT PAGE ***



Authorized Signature

Date Processed

OFFICIAL ONLY IF RECEIVED IN A COLLEGE ENVELOPE MARKED "NOT VALID IF OPENED."

IN ACCORDANCE WITH THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT OF 1974, AS AMENDED, TRANSCRIPTS MAY NOT BE RELEASED TO A THIRD PARTY WITHOUT THE WRITTEN CONSENT OF THE STUDENT

**Tompkins Cortland Community College**

Office of the Registrar
PO Box 139
Dryden, NY 13053

Name: Rosevelt Beal

Program/Degree/Curriculum: Under Grad/AS/Liberal Arts Social Science

Id: Redacted

Degree/Date Granted: AS May 29, 1997

Previous Institution: MOHAWK VALLEY COMMUNITY COLLEGE, NoDeg (T)

Honors:
Cumulative GPA: 2.329

| Course Id | Title | Grade | Credits | QPnts |
|-----------|-------|-------|---------|-------|
| | **Summer 1996** | | | |
| MATH109 | ELEM MATHEMATICAL | B | 3.00 | 9.00 |

| | Attempt | Earned | Total | GPACrd | QPnts | GPA |
|------|---------|--------|-------|--------|-------|-----|
| Term | 12.00 | 12.00 | 12.00 | 12.00 | 29.10 | 2.425 |
| Cum | 45.00 | 42.00 | 46.00 | 42.00 | 82.20 | 1.957 |

WAIVER - Substitute PSYC 201 for capstone course in 5SS. Approved 8/21/96.

| Course Id | Title | Grade | Credits | QPnts |
|-----------|-------|-------|---------|-------|
| | **Fall 1996** | | | |
| HSTY201 | AMERICAN HISTORY T | B | 3.00 | 9.00 |
| LSRE105 | INTRAMURALS | A | 1.00 | 4.00 |
| PSYC201 | SOCIAL PSYCHOLOGY | A | 3.00 | 12.00 |

| | Attempt | Earned | Total | GPACrd | QPnts | GPA |
|------|---------|--------|-------|--------|-------|-----|
| Term | 7.00 | 7.00 | 7.00 | 7.00 | 25.00 | 3.571 |
| Cum | 52.00 | 49.00 | 53.00 | 49.00 | 107.20 | 2.188 |

WAIVER - Substiute HLTH 207 for the social science/humanities elective in 5SS. Aproved 9/5/96.

| Course Id | Title | Grade | Credits | QPnts |
|-----------|-------|-------|---------|-------|
| | **Spring 1997** | | | |
| GEOG115 | WORLD REGIONAL GE | C+ | 3.00 | 6.90 |
| HSTY202 | AMER HSTY SINCE 187 | A- | 3.00 | 11.10 |
| SOCI101 | INTRO TO SOCIOLOGY | B+ | 3.00 | 9.90 |

| | Attempt | Earned | Total | GPACrd | QPnts | GPA |
|------|---------|--------|-------|--------|-------|-----|
| Term | 9.00 | 9.00 | 9.00 | 9.00 | 27.90 | 3.100 |
| Cum | 61.00 | 58.00 | 62.00 | 58.00 | 135.10 | 2.329 |

**End of Transcript**

Authorized Signature

Date Processed

OFFICIAL ONLY IF RECEIVED IN A COLLEGE ENVELOPE MARKED "NOT VALID IF OPENED."

IN ACCORDANCE WITH THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT OF 1974, AS AMENDED, TRANSCRIPTS MAY NOT BE RELEASED TO A THIRD PARTY WITHOUT THE WRITTEN CONSENT OF THE STUDENT

# tc3

## Tompkins Cortland Community College

**Academic Records Office**
170 North Street
PO Box 139
Dryden, NY 13053-0139

(607) 844-8211

Fax: (607) 844-6550

www.tc3.edu

In accordance with the Family Educational Rights and Privacy Act of 1974, as amended, this information is released on the condition that you will not permit any other party to have access to this information without the written consent of the individual whose record it is.

---

**September 1997 – Present**

| | | |
|---|---|---|
| A | = 4.0 | High Achievement |
| A- | = 3.7 | |
| B+ | = 3.3 | |
| B | = 3.0 | Good Achievement |
| B- | = 2.7 | |
| C+ | = 2.3 | |
| C | = 2.0 | Satisfactory Achievement |
| C- | = 1.7 | |
| D+ | = 1.3 | |
| D | = 1.0 | Below Satisfactory Achievement |
| D- | = 0.7 | |
| F | = 0.0 | |
| WF | = 0.0 | Withdrawal/Failing |
| AW | = 0.0 | Administrative Withdrawal* |
| I | = | Incomplete* |
| IED | = | International Education* |
| IP | = | In Progress* |
| NC | = | No Credit Used for Permission to Attends where transfer credit isn't granted. |
| P | = | Pass* |
| W | = | Withdrawal* |
| WP | = | Withdrawal/Passing* |
| X | = | Audit* |
| . | | A grade with a "." (Period) indicates that the grade has been changed from an incomplete |
| [] | = | Repeated course |

The notation of "H" to the right of the quality points or after the course number indicates the student has received honors credit.

\* Not used in determining QPI/GPA

**Effective September 1986** – Equivalent credit courses do not carry academic credit although grades are issued and recorded on the permanent transcript.

---

## Tompkins Cortland Community College

At the request of the student, we have forwarded this transcript of record. This transcript is not official unless it has been received from the Academic Records Office on green safety paper bearing the signature of the Registrar, the date of issue, and the college seal.

Tompkins Cortland Community College is accredited by the Commission on Higher Education of the Middle States Association of Colleges and Secondary Schools, and the Board of Regents of the University of the State of New York; in addition the National League for Nursing has accredited the nursing program.

**Academic Information:** The average semester consists of 15 weeks of study. Degree certification requires a minimum of 60 credit hours with 1 credit hour of Fitness (FITN) and 1-3 credits hours of personal health and a cumulative grade point average of 2.000. Certain degree programs require additional credit hours and grade point achievements. All Tompkins Cortland Community College credit is reported in terms of semester hours.

If you require any of our previous grading systems, please contact the registrar's office at (607)-844-8211.

# OFFICIAL TRANSCRIPT

```
RECORD FOR:

      BEAL, ROSEVELT              SOC SEC NO...: REDACTED
      PO BOX 375
                                  ENTRY TERM..: 9/97
      DRYDEN          NY  13053   HIGH SCHOOL.: ELMIRA FREE ACADEMY

      UNDERGRAD MAJOR: POLITICAL SCIENCE


1997 SUMMER SEMESTER

SUCCESS IN TEACHING         EDU  270     3.00 B+      9.9
MEAS & EVAL IN EDUCATION    EDU  350     3.00 D-      2.1
TCHNG ELEM SCHL SCIENCE     EDU  374     2.00 C       4.0

UNDERGRADUATE TOTALS
      TRANSFER CREDITS           CORTLAND CREDITS    HOURS
        PSSD      ACCTD     ATTD   PSSD   GPA        TW GRADTN
SEM                         8.0    8.0   2.000       8.0
TOT                         8.0    8.0   2.000       8.0


1997   FALL SEMESTER

INTRO AMER GOVT & POL-G1  POL  100     3.00 C-      5.1
COMPR WORLD POLITICS-G3   POL  101     3.00 C+      6.9
INTERNATIONAL RELATIONS   POL  250     3.00 C       6.0
BEGINNING SPANISH 1       SPA  101     4.00 D-      2.8
TRANSFER CREDIT   TC3:1C1/PRIN BIOLOGY 1
TRANSFER CREDIT   TC3:1C2/PRIN BIOLOGY 2
TRANSFER CREDIT   TC3:1C5/SUR COMP INFO SYS
TRANSFER CREDIT   TC3:2C1/FUND SPEECH
TRANSFER CREDIT   MVCC:101/ENGLISH 1
TRANSFER CREDIT   TC3:1C2/APPROACHES LIT
TRANSFER CREDIT   TC3:1C1/INTRO ECONOMICS 1
TRANSFER CREDIT   TC3:2C1/AM HISTORY 1877
TRANSFER CREDIT   TC3:115/WLD REG GEOGRAPHY
TRANSFER CREDIT   TC3:110/GEOG OF AMERICA
TRANSFER CREDIT   TC3:202/AM HIS SINCE 1877
TRANSFER CREDIT   TC3:2C7/DRUG STUDIES
TRANSFER CREDIT   TC3:1C2/INTRO PARALEGALIS
TRANSFER CREDIT   TC3:1C1/INTRO PARALEGALIS
TRANSFER CREDIT   TC3:1C9/ELEM MATH  METHOD
TRANSFER CREDIT   TC3:1C5/INTRAMURALS
TRANSFER CREDIT   MVCC:154/FITNESS CTR 1
TRANSFER CREDIT   TC3:1C3/INTRO PSYCHOLOGY
TRANSFER CREDIT   TC3:2C7/DEV PSYC, ADLESCN
TRANSFER CREDIT   TC3:2C5/DEVEL PSYCH CHILD
TRANSFER CREDIT   TC3:2C1/SOCIAL PSYCH
TRANSFER CREDIT   TC3:1C1/INTRO SOCIOLOGY

TRANSFER CREDITS ACCEPTED          62.0

UNDERGRADUATE TOTALS
      TRANSFER CREDITS           CORTLAND CREDITS    HOURS
        PSSD      ACCTD     ATTD   PSSD   GPA        TW GRADTN
SEM   62.0      62.0       13.0   13.0   1.600       75.0
TOT   62.0      62.0       21.0   21.0   1.752       83.0
```

Registrar

```
TRANSCRIPT
PRINTED:
5/25/99
```

(30)

RECORD FOR:

    BEAL, ROSEVELT                  SOC SEC NO...: REDACTED
    PO BOX 375
                                  ENTRY TERM..: 9/97
    DRYDEN           NY  13053       HIGH SCHOOL.: ELMIRA FREE ACADEMY

    UNDERGRAD MAJOR: POLITICAL SCIENCE

1997 SUMMER SEMESTER

SUCCESS IN TEACHING       EDU  270    3.00 B+    9.9
MEAS & EVAL IN EDUCATION   EDU  350    3.00 D-    2.1
TCHNG ELEM SCHL SCIENCE    EDU  374    2.00 C     4.0

UNDERGRADUATE TOTALS
    TRANSFER CREDITS           CORTLAND CREDITS     HOURS
    PSSD      ACCTD       ATTD   PSSD   GPA     TW GRADTN
SEM                        8.0   8.0   2.000    8.0
TOT     8.0    8.0        8.0   8.0   2.000    8.0

1997   FALL SEMESTER

INTRO AMER GOVT & POL-G1    POL  100    3.00 C-    5.1
COMPR WORLD POLITICS-G3     POL  101    3.00 C+    6.9
INTERNATIONAL RELATIONS     POL  250    3.00 C     6.0
BEGINNING SPANISH 1         SPA  101    4.00 D-    2.8
TRANSFER CREDIT    TC3:101/PRIN BIOLOGY 1
TRANSFER CREDIT    TC3:102/PRIN BIOLOGY 2
TRANSFER CREDIT    TC3:105/SUR COMP INFO SYS
TRANSFER CREDIT    TC3:201/FUND SPEECH
TRANSFER CREDIT    MVCC:101/ENGLISH 1
TRANSFER CREDIT    TC3:102/APPROACHES LIT
TRANSFER CREDIT    TC3:101/INTRO ECONOMICS 1
TRANSFER CREDIT    TC3:201/AM HISTORY 1877
TRANSFER CREDIT    TC3:115/WLD REG GEOGRAPHY
TRANSFER CREDIT    TC3:110/GEOG OF AMERICA
TRANSFER CREDIT    TC3:202/AM HIS SINCE 1877
TRANSFER CREDIT    TC3:207/DRUG STUDIES
TRANSFER CREDIT    TC3:102/INTRO PARALEGALIS
TRANSFER CREDIT    TC3:101/INTRO PARALEGALIS
TRANSFER CREDIT    TC3:109/ELEM MATH METHOD
TRANSFER CREDIT    TC3:105/INTRAMURALS
TRANSFER CREDIT    MVCC:154/FITNESS CTR 1
TRANSFER CREDIT    TC3:103/INTRO PSYCHOLOGY
TRANSFER CREDIT    TC3:207/DEV PSYC, ADLESCN
TRANSFER CREDIT    TC3:205/DEVEL PSYCH CHILD
TRANSFER CREDIT    TC3:201/SOCIAL PSYCH
TRANSFER CREDIT    TC3:101/INTRO SOCIOLOGY

TRANSFER CREDITS ACCEPTED      62.0

UNDERGRADUATE TOTALS
    TRANSFER CREDITS           CORTLAND CREDITS     HOURS
    PSSD      ACCTD       ATTD   PSSD   GPA     TW GRADTN
SEM  62.0    62.0      13.0  13.0  1.600   75.0
TOT  62.0    62.0      21.0  21.0  1.752   83.0



_Jane M. Margine_

Registrar

TRANSCRIPT
PRINTED:
5/25/99



Check your transcript status to view a list of the official transcripts we've received to date.

**Please note:**

**Your unofficial evaluation will be completed within 2-3 weeks of receipt of your official transcripts and all other missing documentation such as the following:**

- **Nursing Candidates: Current License or Certification**
- **Technology Candidates: Time Limit Appeal and Course Descriptions if applicable**

**If you are uncertain of your status, please feel free to contact the Admissions Office, toll free at 888-647-2388 ext. 27**

| Expecting Transcripts/Documentation From: | To be requested by: | Requested Date: | Requested time(s) |
|---|---|---|---|
| STRAYER UNIVERSITY | Applicant | N/A | N/A |
| GA HS VERIFICATION | Applicant | N/A | N/A |
| SOUTH UNIVERSITY | Applicant | N/A | N/A |

**Transcripts/Documents Received:**

| | |
|---|---|
| ELMIRA COLL | 05/23/2016 |
| TOMPKINS CORTLAND CC | 05/23/2016 |
| SUNY BINGHAMTON | 05/23/2016 |
| SUNY CORTLAND | 05/18/2016 |
| CORTLAND UNIV | 11/22/2004 |

© 2016 Excelsior College



Rosevelt Beal
231 West 12th Street Apt 6
Elmira Heights, NY 14903

**ELMIRA COLLEGE**
OFFICE OF THE REGISTRAR
ONE PARK PLACE
ELMIRA, NEW YORK 14901
607-735-1895

ACADEMIC TRANSCRIPT

Student ID#: Redacted
Issue Date: March 30, 2009
Page 1 of 2

| COURSE NUMBER | COURSE TITLE | GRADE | CREDIT HOURS | QUALITY HOURS | QUALITY POINTS |
|---|---|---|---|---|---|

### Undergraduate Academic Record

Current Program:
  BACHELOR OF SCIENCE

    Major: Undecided

Higher Education Institutions:
    Mohawk Valley Community
    College
    SUNY Cortland
    Tompkins-Cortland Community
    College

-------Winter 2005-------

**Mohawk Valley Community College**

| Course | Title | Grade | Credit Hours | Quality Hours | Quality Points |
|---|---|---|---|---|---|
| TRN1000 | UG TRN CREDIT ACCEPTED | T | 4.00 | | |

**SUNY Cortland**

| Course | Title | Grade | Credit Hours | Quality Hours | Quality Points |
|---|---|---|---|---|---|
| TRN1000 | UG TRN CREDIT ACCEPTED | T | 35.00 | 0.00 | 0.00 |

**Tompkins-Cortland Community College**

| Course | Title | Grade | Credit Hours | Quality Hours | Quality Points |
|---|---|---|---|---|---|
| TRN1000 | UG TRN CREDIT ACCEPTED | T | 37.00 | 0.00 | 0.00 |

| | AHRS | EHRS | QHRS | QPTS | GPA |
|---|---|---|---|---|---|
| Current | 0.00 | 37.00 | 0.00 | 0.00 | 0.000 |
| Cumulative | 0.00 | 76.00 | 0.00 | 0.00 | 0.000 |

| Course | Title | Grade | Credit Hours | Quality Hours | Quality Points |
|---|---|---|---|---|---|
| HIS2602 | HISTORY OF CHINA | B | 3.00 | 3.00 | 9.00 |
| SPA1020 | FIRST YEAR SPANISH II | A | 3.00 | 3.00 | 12.00 |

| | AHRS | EHRS | QHRS | QPTS | GPA |
|---|---|---|---|---|---|
| Current | 6.00 | 6.00 | 6.00 | 21.00 | 3.500 |
| Cumulative | 6.00 | 82.00 | 6.00 | 21.00 | 3.500 |

REGISTRAR

FEDERAL LAW PROHIBITS ACCESS TO THIS RECORD BY ANY PARTY WITHOUT WRITTEN CONSENT OF THE STUDENT
ORIGINAL TRANSCRIPT HAS A PURPLE BORDER, A COLLEGE SEAL, AND SIGNATURE OF THE REGISTRAR





Rosevelt Beal
231 West 12th Street Apt 6
Elmira Heights, NY 14903

# ELMIRA COLLEGE
OFFICE OF THE REGISTRAR
ONE PARK PLACE
ELMIRA, NEW YORK 14901
607-735-1895

ACADEMIC TRANSCRIPT

Student ID#: Redacted
Issue Date: March 30, 2009
Page 2 of 2

| COURSE NUMBER | COURSE TITLE | GRADE | CREDIT HOURS | QUALITY HOURS | QUALITY POINTS |
|---|---|---|---|---|---|

-------Spring 2005-------

| HIS2915 | COVERING THE EAST: U.S. MEDIA A | B | 3.00 | 3.00 | 9.00 |
| SOC2903 | LAW IN SOCIETY | A | 3.00 | 3.00 | 12.00 |

| | AHRS | EHRS | QHRS | QPTS | GPA |
|---|---|---|---|---|---|
| Current | 6.00 | 6.00 | 6.00 | 21.00 | 3.500 |
| Cumulative | 12.00 | 88.00 | 12.00 | 42.00 | 3.500 |

*******No Further Entries This Page*******

REGISTRAR

FEDERAL LAW PROHIBITS ACCESS TO THIS RECORD BY ANY PARTY WITHOUT WRITTEN CONSENT OF THE STUDENT
ORIGINAL TRANSCRIPT HAS A PURPLE BORDER, A COLLEGE SEAL, AND SIGNATURE OF THE REGISTRAR

(33)



Date:    12/12/2011

**South University**

**Unofficial Transcript**

709 Mall Boulevard
Savannah, GA 31406

**Student:** Rosevelt Beal

**Address:** 413 Railroad Ave.
Odum, GA 31565

**Student ID:** 1008994788

**Student GPA:** 2.50

## Grade History

**Program:** AS Paralegal Studies
**Concentration(s):** General - AS in Paralegal Studies
**Enrollment #:** 1002028244
**Start Date:** 2/18/2010          **Drop Date:** 4/13/2010

**Term:** TRANSFER          **Enroll Status:** Withdrawal

*Transfer From: TOMPKINS-CORTLAND COMMUNITY COLLEGE*

*** Transfer Credit ***

| Course Code | Course Description | Credits Attempted | Credits Earned | Grade | Quality Points | Course Code | Course Description | Credits Attempted | Credits Earned |
|---|---|---|---|---|---|---|---|---|---|
| ITS1000 | Computer and Internet Literacy | 0.00 | 4.00 | TR | 0.00 | | | | |
| LGS1001 | Introduction to Paralegalism | 0.00 | 4.00 | TR | 0.00 | | | | |
| PSY1001 | General Psychology | 0.00 | 4.00 | TR | 0.00 | | | | |

| Term GPA:  0.00 | | Cum GPA:  0.00 | 0.00 | 12.00 | 0.00 | | | | |

**Term: 20100TGF** | **2010 Winter Quarter** | 1/9/2010 | 3/27/2010

| BUS1038 | Business Law I | 4.00 | 4.00 | B | 12.00 | | | | |
| BUS2023 | Business Communications | 4.00 | 4.00 | C | 8.00 | | | | |

| Term GPA:  2.50 | | Cum GPA:  2.50 | 8.00 | 8.00 | 20.00 | | | | |

| AS Paralegal Studies | | GPA:  2.50 | 8.00 | 8.00 | 20.00 | | | | |

*** End of Transcript ***

Unofficial Transcript

** Indicates Retaken Course
R* Indicates Retaken Override
^ Indicates Developmental Course Grade




civil.rights@sony.com

## Academic Program History

Program: Bachelor of Business Admin
01/28/2010: Active in Program
01/28/2010: Bachelor of Business Administration Concentration in Legal Studies

### Transfer Credits

**Transfer Credit from ELMIRA COLLEGE**
Applied Toward Bachelor of Business Admin Program

Spring Quarter 2010

| Course | | Description | Attempted | Earned | Grade | Points |
|--------|---|-------------|-----------|--------|-------|--------|
| HUM | 101 | Origins Of Western Culture | 4.500 | 4.500 | TC | 0.000 |
| Course Trans GPA: | 0.000 | Transfer Totals: | 3.000 | 4.500 | | 0.000 |

**Transfer Credit from MOHAWK VALLEY COMMUNITY COLLEGE**
Applied Toward Bachelor of Business Admin Program

Spring Quarter 2010

| Course | | Description | Attempted | Earned | Grade | Points |
|--------|---|-------------|-----------|--------|-------|--------|
| ENG | 115 | English Composition | 4.500 | 4.500 | TC | 0.000 |
| Course Trans GPA: | 0.000 | Transfer Totals: | 3.000 | 4.500 | | 0.000 |

**Transfer Credit from STATE UNIVERSITY OF NEW YORK COLLEGE AT CORTLAND**
Applied Toward Bachelor of Business Admin Program

Spring Quarter 2010

| Course | | Description | Attempted | Earned | Grade | Points |
|--------|---|-------------|-----------|--------|-------|--------|
| CRJ | 100 | Introduction To Criminal Just. | 4.500 | 4.500 | TC | 0.000 |
| ELC | 001 | General Elective | 4.500 | 4.500 | TC | 0.000 |
| ELC | 002 | General Elective | 4.500 | 4.500 | TC | 0.000 |
| ELC | 003 | General Elective | 4.500 | 4.500 | TC | 0.000 |
| ELC | 004 | General Elective | 4.500 | 4.500 | TC | 0.000 |
| ELC | 005 | General Elective | 4.500 | 4.500 | TC | 0.000 |
| ELC | 006 | General Elective | 4.500 | 4.500 | TC | 0.000 |
| POL | 000 | Politics Elective | 4.500 | 4.500 | TC | 0.000 |
| POL | 220 | Govmnt & Poltics | 4.500 | 4.500 | TC | 0.000 |
| POL | 300 | Contemp Intl Problems | 4.500 | 4.500 | TC | 0.000 |
| POL | 310 | Comparative Political Sys | 4.500 | 4.500 | TC | 0.000 |
| Course Trans GPA: | 0.000 | Transfer Totals: | 63.000 | 49.500 | | 0.000 |

**Transfer Credit from TOMPKINS-CORTLAND COMMUNITY COLLEGE**
Applied Toward Bachelor of Business Admin Program

Spring Quarter 2010

| Course | | Description | Attempted | Earned | Grade | Points |
|--------|---|-------------|-----------|--------|-------|--------|
| CIS | 105 | Intro To Info Syst | 4.500 | 4.500 | TC | 0.000 |
| ECO | 100 | Principles Of Economics | 4.500 | 4.500 | TC | 0.000 |
| HUM | 100 | Intro to Art, Music & Lit. | 4.500 | 4.500 | TC | 0.000 |
| LEG | 101 | Introduction To Paralegal Stud. | 4.500 | 4.500 | TC | 0.000 |
| LEG | 215 | Legal Research And Writing | 4.500 | 4.500 | TC | 0.000 |
| MAT | 105 | Intro To College Math | 4.500 | 4.500 | TC | 0.000 |

This official transcript is printed on SCRIP-SAFE
security paper and does not require a raised seal.

Robert A. Berwick, University Registrar

EXPLANATORY LEGEND AND AUTHENTICITY STATEMENT APPEAR ON REVERSE SIDE




| | | | | | | |
|---|---|---|---|---|---|---|
| SOC | 100 | Intro To Sociology | | 4.500 | | |
| Course Trans GPA | | 0.000   Transfer Totals | 87.000 | 40.500 | | 0.000 |

**Transfer Credit from Tompkins Cortland Community Co**
Applied Toward a Bachelor of Business Admin Program
Incoming Course
Transferred to Term Spring Quarter 2010 as
ENG        215        Research & Writing                                    4.500 TC

**Transfer Credit from Elmira College**
Applied Toward Bachelor of Business Admin Program
Incoming Course
Transferred to Term Spring Quarter 2010 as
LEG        300        Tort Law                                                       4.500 TC

### Beginning of Undergraduate Record

#### Spring Quarter 2010

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| BUS | 100 | Intro To Business | 4.500 | 4.500 | A | 18.000 |
| BUS | 305 | Principles Of Management | 4.500 | 4.500 | A | 18.000 |

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | | 4.000  Term Totals | 9.000 | 9.000 | 9.000 | 36.000 |
| Cum GPA | | 4.000  Cum Totals | 9.000 | 9.000 | 9.000 | 36.000 |

#### Summer Quarter 2010

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| ACC | 100 | Accounting | 4.500 | 0.000 | F | 0.000 |
| BUS | 105 | Fndmntls Of E-Bus | 4.500 | 0.000 | F | 0.000 |

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | | 0.000  Term Totals | 9.000 | 0.000 | 9.000 | 0.000 |
| Cum GPA | | 2.000  Cum Totals | 18.000 | 9.000 | 18.000 | 36.000 |

**Undergraduate Career Totals**
| | | | | | | |
|---|---|---|---|---|---|---|
| Cum GPA: | | 2.000   Cum Totals | 18.000 | 9.000 | 18.000 | 36.000 |

### End of Official Transcript

* Indicates course is excluded from student GPA

This official transcript is printed on SCRIP-SAFE security paper and does not require a raised seal.

Robert A. Berwick, University Registrar

EXPLANATORY LEGEND AND AUTHENTICITY STATEMENT APPEAR ON REVERSE SIDE






Begin forwarded message:

**From:** P B <pb123pb6@gmail.com>

**Subject: Class of 2000**

**Date:** October 7, 2014 11:46:20 PM EDT

**To:** nappel@binghamton.edu

Dear Ms Appelbaum I am writing to you regarding a grade.  I was in touch with the Bursar's office sometime ago. To make a long story short back in the winter of 2000 I took one your History classes as a returning adult. If you recall we discussed the course in your office and you jokingly stated something to the effect of doing something out of the norm with my grade. I responded by stating- you can't do that. You chuckled and we moved on. At any rate I'm asking that you convey as much of your memory as possible, of my taking the course. It was a small class and you had a male assistant. There was construction going on and your office was a short distance from the classroom. Sort of an open space to other desks or offices. This is a very important issue as I have been deprived of my BA thus my career. I will also be scheduled to meet with the Governor's Office in the near future to resolve this issue. I know this was years back and you had previously forwarded the grade to the Registrar. However they now claim not to have my grades. I am in great need of your assistance  You may recall me. African American singing Bonita Appelbaum while passing by. It was a small class of about 6-7 students. If you can forward any info to the Bursar or my email,  which is rosevelt. beal@gmail.com it would be greatly appreciated  Thank you for your time.                           Respectfully,                           Rosevelt Beal

---

**P B** <pb123pb6@gmail.com>                                                    Mon, Oct 20, 2014 at 8:21 PM
To: rosevelt.beal@gmail.com

[Quoted text hidden]

---

**Rosevelt Beal** <rosevelt.beal@gmail.com>                                    Tue, Nov 11, 2014 at 10:58 PM
To: RB1122@outlook.com

## Forwarded conversation
Subject: **Fwd: courses**



36. Cortland University has failed to grant the petitioner a fair assessment of his GPA in that during the last 2-3 weeks of the semester he was unjustly suspended and not allowed to take his final exams although he was allowed to hand in his remaining homework assignments. As a result the petitioner received grades less than his academic performance displayed, in fact he was deprived of 12 credits for which he toiled for an entire semester. The petitioner was also deprived of an internship in which he would completed his remaining 9 credits to receive his BA degree, not withstanding the valuable experience related to his career and a $2,000 stipend, and a delay in his entry into law school at the age of 38.

## Fourth Cause Of Action

37. Cortland University has failed to render a just decision in that all the evidence presented in their behalf is unsubstantiated as well as conflicting and contradicting. All witnesses presented by the respondent testified to a different occurrence of events, one even contradicting herself first stating that the petitioner was whispering and speaking in a low tone and in the next instance a supposed loud tone. Neither witness could state what was being said with the exception of something to do with a grade which could easily be perceived by anyone who witnessed my showing Dr. Best my test grade after a class in which other classmates also received their test. These witnesses were in fact classmates.

38. Moreover one witness claims the petitioner called Dr. Best a "racist pig" others claim he just called her a racist. This could have easily been discussed by the parties involved since they all had a daily routine of smoking a cigarette after class.

## Fifth Cause Of Action

39. The Cortland Administration has further denied the petitioner due process in that he was not allowed to question or discuss with other students and administrators that would have been vital to his defense. Dr. Best claims that she went directly to Dean Ryder's office to report the alleged offence yet Dean Ryder was not present at the hearing nor was the petitioner allowed to discuss the matter with him or Dr. O'Callaghan who Dr. Best claims to also be involved with her reporting of one of the alleged offences. In addition I was unaware of any reports of harassment or disorderly conduct until Nov. 23rd, 1998 since one incident was supposedly reported on Oct, 21st, 1998 and the other date appears to be uncertain.

## Sixth Cause Of Action

40. Throughout the hearing I was inappropriately interrupted by the Judicial Coordinator. The coordinator acted arbitrarily and capriciously in such a manner that I have been denied due process law and a right to procure a college education and academic career. In pertinence to the above I have been placed in a predicament that has delayed my graduation, and my entry into grad-school; not withstanding the mental stress. In addition to this I have been placed on suspension in my last three weeks until Dec. of 1999 at Cortland University due to these bogus charges. Not withstanding the fact that these charges have not been proven and if they had been true it seems as though Cortland City Court would have been the respondent's recourse.

G33

# Your recent call to SUNY

Droz, Elizabeth

Thu 10/1/2015 8:44 AM

Rb1122@outlook.com <Rb1122@outlook.com>;

Mr. Beal
My office has been informed of your recent contact with SUNY administration.
We have responded to your concerns. Please refer to letter dated May 1, 2014.
The case is closed. There is no further action required by SUNY Cortland or the State University of New York.
Sincerely
E. Droz



**Elizabeth Droz, PhD**
*Assistant Vice Chancellor for Student Affairs*
The State University of New York

Be a part of Generation SUNY:



P B <pb123pb6@gmail.com>
To: rosevelt.beal@gmail.com

Mon, Oct 20, 2014 at 8:27 PM

P B <pb123pb6@gmail.com>
To: rosevelt.beal@gmail.com

Mon, Oct 20, 2014 at 8:28 PM

On Oct 13, 2014 1:09 PM, "P B" <                                              > wrote:

It wasn't a large class at least not in regards to attendance
The assistant as I recall had long dirty blond hair. However the Dean has responded Thank you.

Rosevelt

On Oct 13, 2014 10:57 AM, "Nancy Appelbaum" <                                              > wrote:

Dear Mr. Beal,

Dr. Kim has responded to your query I believe.

I do not have teaching assistants in small classes, nor is my office near my classrooms. However, it appears from her research into the
college's records  that you did take my large Modern Latin America class and I provided a grade;  she recommend you follow up with Student
Accounts.    Best of luck resolving this.

Sincerely,

Nancy Appelbaum
Nancy Appelbaum
Associate Professor of History
Director, Latin American and Caribbean Area Studies Program (LACAS)
Binghamton University, SUNY

On Oct 13, 2014, at 11:54 AM, P B <                                              > wrote:

I'm aware that you wouldn't have records, but really how many African American students have you had at Binghamton? Particularly
dicussing grades in your office? In addition how many assistants have you had? Maybe it's a lot to ask considering the length of time
passed. However  I do have the proof I just don't have the grade. And the registrar claims not to have it despite telling me in person I'd have
pay $3000.00 up front. Perhaps if I come in person you may recall. I should be in the area sometime next month. Thank
you.
Respectfully,

Rosevelt Beal



 The State University
of New York

**Office of Academic Affairs
and the Provost**

State University Plaza
Albany, New York  12246

www.suny.edu

May 1, 2014

Mr. Roosevelt Beal
409 Rail Road Street
Odum, Georgia  31555

Dear Mr. Beal:

Your letter to Governor Cuomo's office was forwarded to the State University of New
York for a response. We have reviewed the matter extensively with the State University of
New York at Cortland ("SUNY Cortland"). Our review found that SUNY Cortland
appropriately followed published procedures in the handling of the matter related to your
status at the College.

Furthermore, we learned that SUNY's Office of the General Counsel reviewed your
situation many years ago and responded to allegations you cited at that time. The Office of
the General Counsel noted in a letter to you, dated December 8, 2004, that your suspension
from the College for violations of the Student Code of Conduct was upheld by the State
Supreme Court, Cortland County and that the U.S. Office for Civil Rights determined that
the College had not discriminated against you on your readmission application.

In response to your recent letter, another review by the Office of General Counsel
determined that no violations of law or procedure occurred with respect to how you were
treated by SUNY Cortland. In our view, there is no further action required by SUNY
Cortland or by the State University of New York.

Sincerely,

Elizabeth Droz, PhD
Assistant Vice Chancellor for Student Affairs

Cc:     SUNY Chancellor, Dr. Nancy Zimpher
        SUNY Office of General Counsel
        SUNY Cortland

To Learn
To Search
To Serve



 the Power of SUNY



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE FOR CIVIL RIGHTS

75 PARK PLACE

NEW YORK, NEW YORK 10007

February 25, 1999

HELEN N. WHITNEY
DIRECTOR
NEW YORK OFFICE
EASTERN DIVISION

Mr. Roosevelt Beal
P.O. Box 875
Dryden, New York  13053

Re:    Case No. 02-99-2017

Dear Mr. Beal:

This letter is in response to the message you left on my voice mail on February 5, 1999 regarding Ms. Stacy Joynes , a member of my staff.  In your message, you advised me that you had asked Ms. Joynes a question regarding her sexual orientation.  You also indicated that, because you have suspicions about Ms. Joynes' sexual orientation, you would like another investigator be assigned to your complaint.

Please be advised that Ms. Joynes is an excellent investigator dedicated to OCR's mission and to enforcing the regulations OCR is mandated to enforce.  Not only was your question regarding Ms. Joynes' sexual orientation inappropriate, it was irrelevant to the processing of your complaint with this Office. Therefore, this Office, including Ms. Joynes, will continue the processing of your complaint in a thorough and professional manner.  I would also like to advise you that should you continue to make inquiries into the sexual orientation of my staff, those inquiries will not be responded to.

If you have any questions regarding this matter, please feel free to contact me, at (212) 637-6307.

Sincerely,

Anna M. Moretto
Compliance Team Leader





**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26TH FLOOR
NEW YORK, NEW YORK 10005

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

November 18, 2013

Mr. Rosevelt Beal
409 RR Street
Odum, Georgia 31555

Re:     Case No. 02-14-2031
        SUNY College at Cortland

Dear Mr. Beal:

On November 18, 2013, the U. S. Department of Education, New York Office for Civil Rights (OCR) received your correspondence(s).  It has been assigned case number 02-14-2031.

Please read the enclosed document entitled "OCR Complaint Processing Procedures." Additional information about OCR and the laws we enforce are available on our website at http://www.ed.gov/ocr.

OCR is committed to providing prompt and effective service.  If you need to communicate with OCR regarding your complaint before you are contacted directly, please contact the office at (646) 428-3800, by fax at 646-428-3843 or by email at OCR.NewYork@ed.gov.

Very truly yours,

Diane S. Diggs

Encl.

(42)

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26TH FLOOR
NEW YORK, NEW YORK 10005

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

December 23, 2013

Rosevelt Beal
409 RR Street
Odum, Georgia 31555

Re:   Case No. 02-14-2032
      State University of New York at Binghamton

Dear Mr. Beal:

On November 18, 2013, the U.S. Department of Education, New York Office for Civil Rights (OCR) received the above-referenced complaints you filed against the State University of New York at Binghamton.  You alleged that the University discriminated against you, on the basis of race and retaliated against you, by denying you financial aid and refusing to release your transcript. Based on information you provided in your complaint, OCR has determined that it will not investigate your complaint for the reasons set forth below.

OCR has determined that your complaint is untimely.  OCR requires that complaints be filed within 180 days of the alleged discrimination, unless the time for filing is extended by this office. The information you provided indicated that the acts of which you complained first occurred in October 1998, more than 180 days from the filing of your OCR complaint on November 18, 2013.

In your complaint form, you requested a waiver of the timeliness requirement and stated that the issue is ongoing, as your most recent request to the University regarding this issue was in July 2013.  OCR has determined that ongoing attempts to contact the University and resolve this matter do not constitute new acts of discrimination, nor do they warrant a waiver of the timeliness requirement.[1]  Therefore, your request for a waiver is denied.  Accordingly, OCR has dismissed your complaint as of the date of this letter.[2]

---

[1] Moreover, OCR determined that these allegations are a continuation of the same or similar allegations you raised against the University in previous OCR complaints (Complaint Nos. 02-99-2017, 02-00-2123, 02-10-2157), which OCR determined to be without merit.
[2] OCR has already reviewed this allegation in Case No. 02-10-2203; and in a letter dated August 17, 2010, OCR advised you that it was inappropriate for investigation.

(43)

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Please be advised that the University may not harass, coerce, intimidate, or discriminate against any individual because he or she has filed a complaint or participated in the complaint resolution process. If this happens, you may file another complaint alleging such treatment.

Under the Freedom of Information Act, it may be necessary to release this document and related correspondence and records upon request. In the event that OCR receives such a request, it will seek to protect, to the extent provided by law, personally identifiable information, which, if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy.

If you have any questions regarding OCR's determination, please contact, Jeanette Tejada Bustos, Compliance Team Attorney, at (646) 428-3777 or jeanette.tejadabustos@ed.gov; Jocelyn Panicali, Compliance Team Attorney, at (646) 428-3796 or jocelyn.panicali@ed.gov; or me, at (646) 428-3801 or nadja.r.allen.gill@ed.gov.

Sincerely,

Nadja Allen Gill
Compliance Team Attorney



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26TH FLOOR
NEW YORK, NEW YORK 10005

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

October 6, 2015

Rosevelt Beal
409 Rail Road Street
Odum, Georgia 31555

Re:   Case No. 02-16-2010
      SUNY Binghamton University

Dear Mr. Beal:

On October 6, 2015, the U. S. Department of Education, New York Office for Civil Rights (OCR) received your correspondence(s).  It has been assigned case number 02-16-2010.

Please read the enclosed document entitled "OCR Complaint Processing Procedures." Additional information about OCR and the laws we enforce are available on our website at http://www.ed.gov/ocr.

We have also enclosed a Consent Form.  Please sign and date this Consent Form and return it to us as soon as possible.  If we do not receive the signed Consent Form within 20 calendar days of the date of this letter, we may close your complaint.

OCR is committed to providing prompt and effective service.  If you need to communicate with OCR regarding your complaint before you are contacted directly, please contact the office at (646) 428-3800, by fax at 646-428-3843 or by email at OCR.NewYork@ed.gov.

Very truly yours,

Diane S. Diggs

Encl.



*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26ᵀᴴ FLOOR
NEW YORK, NEW YORK 10005

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

November 3, 2015

Rosevelt Beal
409 Rail Road Street
Odum, Georgia 31555

Re:   Case No. 02-16-2009
      State University of New York at Cortland

Dear Mr. Beal:

On October 6, 2015, the U.S. Department of Education, New York Office for Civil Rights (OCR) received the above-referenced complaint you filed against the State University of New York at Cortland (the University).  You alleged that the University retaliated against you by giving you "withdrawals," in your courses in or around fall semester 1998.[1]  Based on information you provided in your complaint, and in supporting documentation, OCR has determined that it will not investigate your complaint for the reasons set forth below.

OCR has determined that your complaint is untimely.  OCR requires that complaints be filed within 180 days of the alleged discrimination, unless the time for filing is extended by this office. The information you provided indicated that the acts of which you complained occurred during the last semester you attended the University, fall 1998, more than 180 days from the filing of your OCR complaint on October 6, 2015.

In your complaint form, you requested a waiver of the timeliness requirement and stated that there is no statute of limitations in the Constitution.  You also stated that on October 1, 2015, you received an email from SUNY Headquarters advising you that it would not issue you a degree and would not investigate this matter further.  OCR has determined that ongoing attempts to contact the University and resolve this matter do not constitute new acts of discrimination/retaliation, nor do they warrant a waiver of the timeliness requirement. Therefore, your request for a waiver is denied.  Accordingly, OCR has dismissed your complaint as of the date of this letter.

---

[1] You also requested that OCR reopen the first two cases that you filed against SUNY Cortland, Case Nos. 02-99-2017 and 02-00-2123.  OCR's Case Processing Procedures permit a complainant to submit an appeal of OCR's letter finding insufficient evidence of a violation within 60 days of the date of the determination letter.  The determination letters in your previous cases were issued on May 4, 1999 and April 12, 2001, respectively.



*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Page 2 of 2 – Rosevelt Beal, Case No. 02-16-2009

Please be advised that the University may not harass, coerce, intimidate, or discriminate against any individual because he or she has filed a complaint or participated in the complaint resolution process. If this happens, you may file another complaint alleging such treatment.

Under the Freedom of Information Act, it may be necessary to release this document and related correspondence and records upon request. In the event that OCR receives such a request, it will seek to protect, to the extent provided by law, personally identifiable information, which, if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy.

If you have any questions regarding OCR's determination, please contact, Jocelyn Panicali, Compliance Team Attorney, at (646) 428-3796 or jocelyn.panicali@ed.gov; or me, at (646) 428-3801 or nadja.r.allen.gill@ed.gov.

Sincerely,

Nadja Allen Gill
Compliance Team Leader

(44)



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26TH FLOOR
NEW YORK, NEW YORK 10005

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

November 3, 2015

Honorable Johnny Isakson
United States House of Representatives
Attention: Connor Breslin
One Overton Park, Suite 970
Atlanta, Georgia 30339

Re: Rosevelt Beal

Dear Representative Isakson:

I am writing in response to your correspondence, dated October 19, 2015, sent to the Assistant Secretary for Civil Rights for the U.S. Department of Education (the Department). Your correspondence was forwarded to the Department's New York Office for Civil Rights (OCR) and received on October 23, 2015. Your correspondence requested clarification of OCR's findings for complaints filed by your constituent, Mr. Rosevelt Beal. Mr. Beal has filed several complaints against the State University of New York (SUNY) - Binghamton University and SUNY College at Cortland, dating back to December 1998.

In his first complaint filed against SUNY College at Cortland on December 28, 1998, OCR Case No. 02-99-2017, it appears that Mr. Beal alleged that the College discriminated against him, on the basis of his race, by denying his financial aid and grading him incorrectly. It appears that OCR dismissed this complaint because Mr. Beal did not provide a signed consent form to OCR agreeing that OCR had the authority to release his name to the College in order to investigate the complaint. Mr. Beal filed a second complaint against the College on August 9, 2000, OCR Case No. 02-00-2123. It appears that Mr. Beal alleged that the College discriminated against him, on the basis of race, by dismissing him in December 1998 for allegedly making racial remarks to a professor; and, retaliated against him by denying him readmission in November 1999. It appears that OCR closed this complaint on April 12, 2001, with a finding that his first allegation was not timely filed with OCR[1], and that there was insufficient evidence to substantiate his second allegation. Mr. Beal filed his third complaint against the College on June 2, 2010, OCR Case No. 02-10-2157, again alleging that the University discriminated against him, on the basis of race, by dismissing him in December 1998 for allegedly making racial remarks to a professor; and, retaliated against him by denying him readmission in November 1999. In this complaint, Mr. Beal also alleged that the University discriminated against him, on the basis of race, by

---

[1] Regulations OCR enforces require that complaints be filed within 180 days of the alleged discrimination or retaliation.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

accusing him of calling Senator George Winner a "racist" in May 2006, and by denying him readmission to the University in August 2006.  OCR dismissed this complaint on August 16, 2010, advising Mr. Beal that his allegations were untimely filed with OCR and were a continuation of a pattern of previously filed complaints involving the same or similar allegations.  Mr. Beal filed his fourth complaint against the College on November 18, 2013, alleging that the College discriminated against him, on the basis of his race/national origin, by dismissing him in December 1998 for allegedly making racial remarks to a professor; and, retaliated against him by denying him readmission in November 1999.  Mr. Beal also raised the same allegation regarding the accusation that he called Senator George Winner a "racist" in May 2006.  OCR dismissed this complaint on December 23, 2013, advising Mr. Beal that these allegations were a continuation of a pattern of the same allegations he raised against the College in previous OCR complaints.

In his first complaint filed against Binghamton University on June 2, 2010, OCR Case No. 02-10-2203, Mr. Beal alleged that the University discriminated against him on the basis of race, and retaliated against him, by denying his financial aid and refusing to release his transcript.  The information Mr. Beal provided indicated that the acts of which he complained occurred in October 1998.  In a letter dated August 17, 2010, OCR informed Mr. Beal that the regulations OCR enforces require that complaints be filed within 180 days of the alleged discrimination or retaliation.  OCR informed Mr. Beal that it determined that his complaint was untimely, as the alleged acts of discrimination and retaliation occurred more than 180 days from the filing of his complaint with OCR on June 2, 2010.  Mr. Beal subsequently filed the same allegations with OCR on November 18, 2013, OCR Case No. 02-14-2032.  OCR again advised Mr. Beal, in a letter dated December 23, 2013, that his allegations were untimely filed.

On October 6, 2015, Mr. Beal filed new complaints against Binghamton University and the College at Cortland.  OCR is currently evaluating these complaints to determine if these are untimely and/or a continuation of a pattern of the same allegations he raised against the University and the College in previous complaints filed with OCR.

OCR shares your goal of investigating and resolving these complaints in a prompt, fair and reasonable manner.  OCR remains committed to completing and resolving these complaints in an efficient and appropriate manner to address the issues raised in the complaints.  If you should have any questions, please feel free to contact me at (646) 428-3805.

Sincerely,

Timothy C.J. Blanchard



CB

In the cense of life ...
is much tempt of him
The will to the right is the
best of creation
this ... error as h...
...
desire to fulfill the m...
in the midst of life ...
as we engage in the flow
(my race it only us...
... space



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

October 22, 2015

Honorable Johnny Isakson
United States Senator
Attn:  Mr. Connor Breslin
One Overton Park, Suite 970
3625 Cumberland Boulevard
Atlanta, GA   30339

Dear Senator Isakson:

Thank you for your October 19, 2015 correspondence package addressed to Russlynn Ali, former Assistant Secretary for Civil Rights within the U.S. Department of Education, on behalf of Rosevelt Beal, a constituent of yours.   You ask that we review some material you forwarded on your constituent's behalf and forward clarification of our findings to your office.   Thank you also for providing us with a properly executed privacy release form.

As you may already know, OCR enforces statutes and regulations that prohibit organizations from discriminating on the bases of age, disability, race, color, national origin or sex in many programs or activities receiving Federal financial assistance from the U.S. Department of Education.   Additionally, OCR enforces Title II of the Americans with Disabilities Act of 1990 (Title II), which prohibits disability discrimination by state and local government services, whether or not they receive Federal financial assistance; OCR may investigate Title II complaints filed against state or local government education services or against public libraries.   OCR also enforces the Boy Scouts of America Equal Access Act, which addresses equal access to school facilities for the Boy Scouts and certain other youth groups.   Our enforcement authorities permit OCR to entertain complaints alleging retaliation for asserting rights under the laws we enforce or for cooperating in an OCR investigation.   Your constituent may wish to read our publication *Ensuring Equal Access to High-Quality Education* (revised January 2011), accessible at http://www.ed.gov/about/offices/list/ocr/docs/ensure03.html.   Your constituent may find additional information resources on civil rights issues in education at OCR's Web site, http://www.ed.gov/ocr/, and may be particularly interested in our recent report entitled *Protecting Civil Rights, Advancing Equity: Report to the President and Secretary of Education, Under Section 203(b)(1) of the Department of Education Organization Act, FY 13–14,* accessible at http://www2.ed.gov/about/reports/annual/ocr/report-to-president-and-secretary-of-education-2013-14.pdf.

OCR's twelve regional enforcement offices investigate complaints of alleged discrimination or retaliation filed against organizations that fall within our jurisdiction.   Apart from their investigative functions, those offices also provide general technical assistance on the statutes and

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

46

regulations that we enforce.   OCR's New York Enforcement Office (New York Office) investigates complaints against institutions in the State of New York Our records indicate that two complaints made by your constituent are pending with the New York Office:   OCR Docket No. 02-16-2009, against the State University of New York at Cortland; and OCR Docket No. 02-16-2010, against the State University of New York Binghamton University.   I am forwarding your October 19, 2015 correspondence package to the New York Office for further review and appropriate handling.   Contact information for the New York Office follows below:

> Office for Civil Rights, New York Office
> U.S. Department of Education
> 32 Old Slip
> 26th Floor
> New York, NY   10005-2500
>
> Telephone:   (646) 428-3800
> Facsimile:    (646) 428-3890
> E-mail:       OCR.NewYork@ed.gov

As you may recall, OCR does not represent complainants or entities subject to our personal jurisdiction.

OCR is committed to providing the public, including students, parents, educators, representatives of school districts, colleges, and universities, and other interested persons, with information about the civil rights laws OCR enforces.   In responding to correspondence, OCR provides customers with general, publicly-available information about a wide variety of civil rights issues in the education context.   However, OCR does not provide legal or other advice or issue advisory opinions to customers concerning specific factual scenarios.   Correspondence issued by OCR in response to an inquiry from the public does not constitute a formal statement of OCR policy and should not be construed as creating or articulating new policy.   OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public.

Thank you again for contacting the Department.   I hope the information provided is of assistance.

Sincerely,

Corwin K. Jennings
Team Manager
Customer Service Team
Office for Civil Rights

cc:     Office for Civil Rights, New York Office

46

Connor
# 4301557
10/30/2015



**UNITED STATES DEPARTMENT OF EDUCATION**  APR 0 4 2016
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26TH FLOOR
NEW YORK, NEW YORK 10005

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

March 24, 2016

Honorable Johnny Isakson
United States House of Representatives
Attention: Charles Spry
One Overton Park, Suite 970
Atlanta, Georgia 30339

Re:   Rosevelt Beal

Dear Representative Isakson:

I am writing in response to your correspondence dated February 29, 2016, addressed to the former Assistant Secretary for Civil Rights for the U.S. Department of Education. Your correspondence was forwarded to the Department's New York Office for Civil Rights (OCR) and was received on March 1, 2016. Your correspondence requested that OCR give "appropriate consideration" to documents provided to your office by your constituent, Mr. Rosevelt Beal. The documents enclosed with your correspondence included a complaint against the State University of New York, College at Cortland, which Mr. Beal filed with OCR on October 6, 2015.

Mr. Beal has filed several complaints against the State University of New York (SUNY), College at Cortland and Binghamton University, dating back to May 1999. In several recently closed complaints against SUNY, College at Cortland, Mr. Beal alleged that the College discriminated against him, on the basis of his race and national origin, by unjustly suspending him after an incident in October 1998. Mr. Beal also alleged that the College denied him readmission in November 1999 in retaliation for making complaints against the College alleging race discrimination. Mr. Beal further alleged that the College discriminated against him on the basis of race, and retaliated against him for complaining of race discrimination, by accusing him of calling Senator George Winner a "racist" in May 2006. In a letter dated December 23, 2013, OCR informed Mr. Beal that it was closing his case because these allegations were a continuation of the same allegations he raised against the College in previous OCR complaints, dating back to 1999, which OCR determined to be without merit.

In his complaint of October 6, 2015, against SUNY, College at Cortland, a copy of which was enclosed with your correspondence, Mr. Beal alleged that the College retaliated against him by giving him "withdrawals," in his courses in or around fall semester 1998. In response to this complaint, OCR informed Mr. Beal that OCR requires that complaints be filed within 180 days

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Page 2 of 2 – Honorable Johnny Isakson

of the alleged act of discrimination, unless the time for filing is extended by this office.  Mr. Beal requested a waiver of OCR's timeliness requirement by stating that there is no statute of limitations in the Constitution.  In a letter dated November 3, 2015, OCR informed Mr. Beal that his waiver request was denied and that his complaint had been dismissed.

If you should have any questions, please feel free to contact me at (646) 428-3805.

Sincerely,

Timothy C.J. Blanchard

47

1 Real Love 3x

 Gmail                                    Rosevelt Beal <rosevelt.beal@gmail.com>

## Your Monthly Billing Statement Is Available

1 message

**Great Lakes Borrower Services** <info@borrowerservices.mygreatlakes.org>   Wed, Jun 1, 2016 at 2:06 AM
Reply-To: No Reply - Great Lakes <noreply@borrowerservices.mygreatlakes.org>
To: Rosevelt <rosevelt.beal@gmail.com>

   Thanks for Repaying Your Student Loan

U.S. Department of Education

## Hi Rosevelt,

Your June billing statement is now available. See your snapshot below or
view your complete account details by logging into mygreatlakes.org.

## Billing Statement

Great Lakes ID: **75-7998050**

**CURRENT INFORMATION AS OF 05/31/2016**

## Total Amount Due                                  **$0.00**

Total Due By                                          06/21/2016

*Even though no payment is due at this time, you can always make a
payment online.*

**This bill has 2 accounts:**

- Stafford Loan Account with U.S. DEPARTMENT OF EDUCATION (798581)
- Consolidation Loan Account with U.S. DEPARTMENT OF EDUCATION (799581)

View your detailed billing statement online        pay online now

## Check Out Our Knowledge Center



use of the recipient(s) named above, and may be protected under state or federal law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please forward this communication to notme@glhec.org immediately and destroy or delete the original message and any copy of it from your computer system. If you have any questions concerning this message, please contact the sender.



**Knowledge Center**, available on the Great Lakes website, is your one-stop shop to explore a variety of resources that can help you better understand your federal student loan. Check it out today.



Knowledge Center

 Ways to Pay

Remember to reference your Great Lakes ID: **75-7998050**

Manage payments online.

Sign up for Auto Pay.

**Pay by phone** or contact us with questions at                    ,                    , or TTY: 711. *Some calls may be monitored or recorded for quality assurance purposes.*

**Pay by mail**—check your billing statement for the payment mailing address.

 **Having Difficulty Making Payments?**

A different repayment plan may help. The availability of other plans depends on several factors, including your loan type, when you borrowed the money, and the amount of time left in repayment. Such plans could include reduced monthly payments, a graduated or extended repayment period, or a repayment amount that's based on your income.

To learn more about your options, visit mygreatlakes.org/go/lowerpayments **or call**          . Some calls may be monitored or recorded for quality assurance purposes.

**The** Department of Education **also provides information about options that may be available to you.**

mygreatlakes.org | Contact Us | Knowledge Center

 Like us on
**Facebook**

Follow us on
**Twitter**

 Create an account at
**mygreatlakes.org**

This email was sent by Great Lakes Educational Loan Services, Inc.

Please do not reply to this email - the reply address is not monitored. | Modify your email preference

The information contained in this communication may be confidential, is intended only for the





**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS

# SOME INFORMATION ABOUT OCR'S CASE PROCESSING PROCEDURES

## LAWS ENFORCED BY OCR

OCR enforces the following laws:

- Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color or national origin;
- Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex;
- Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination on the basis of disability;
- Age Discrimination Act of 1975, which prohibits discrimination on the basis of age;
- Title II of the Americans with Disabilities Act of 1990 which prohibits discrimination on the basis of disability;
- Boy Scouts of America Equal Access Act, part of the No Child Left Behind Act of 2001, which prohibits denial of access to or other discrimination against the Boy Scouts or other Title 36 U.S.C. youth groups in public elementary schools, public secondary schools, local education agencies, and state education agencies that have a designated open forum or limited public forum.

## EVALUATION OF THE COMPLAINT

OCR evaluates each complaint that it receives in order to determine whether it can investigate the complaint. OCR makes this determination with respect to each allegation in the complaint. For example, OCR must determine whether OCR has legal authority to investigate the complaint; that is, whether the complaint alleges a violation of one or more of the laws OCR enforces. OCR must also determine whether the complaint is filed on time. Generally, a complaint must be filed with OCR within 180 calendar days of the last act that the complainant believes was discriminatory.[1] If the complaint is not filed on time, the complainant should provide the reason for the delay and request a waiver of this filing requirement. OCR will decide whether to grant the waiver. In addition, OCR will determine whether the complaint contains enough information about the alleged discrimination to proceed to investigation. If OCR needs more information in order to clarify the complaint, it will contact the complainant; the complainant has 20 calendar days within which to respond to OCR's request for information.

OCR will dismiss the complaint if OCR determines that:

- OCR does not have legal authority to investigate the complaint;
- The complaint fails to state a violation of one of the laws OCR enforces;
- The complaint was not filed timely and that a waiver will not be granted;

1



- The complaint is unclear or incomplete and the complainant does not provide the information that OCR requests within 20 calendar days of OCR's request;
- The allegations raised by the complaint have been resolved;
- The complaint has been investigated by another Federal, state, or local civil rights agency or through a recipient's internal grievance procedures, including due process proceedings, and the resolution meets OCR regulatory standards or, if still pending, OCR anticipates that there will be a comparable resolution process under comparable legal standards;
- The same allegations have been filed by the complainant against the same recipient in state or Federal court;
- The allegations are foreclosed by previous decisions of the Federal courts, the U.S. Secretary of Education, the U.S. Department of Education's Civil Rights Reviewing Authority, or OCR policy determinations.

## OPENING THE COMPLAINT FOR INVESTIGATION

If OCR determines that it will investigate the complaint, it will issue letters of notification to the complainant and the recipient. Opening a complaint for investigation in no way implies that OCR has made a determination with regard to the merits of the complaint. During the investigation, OCR is a neutral fact-finder. OCR will collect and analyze relevant evidence from the complainant, the recipient, and other sources as appropriate. OCR will ensure that investigations are legally sufficient and are dispositive of the allegations raised in the complaint.

## INVESTIGATION OF THE COMPLAINT

OCR may use a variety of fact-finding techniques in its investigation of a complaint. These techniques may include reviewing documentary evidence submitted by both parties, conducting interviews with the complainant, recipient's personnel, and other witnesses, and/or site visits. At the conclusion of its investigation, OCR will determine with regard to each allegation that:

- there is insufficient evidence to support a conclusion that the recipient failed to comply with the law, or
- a preponderance of the evidence supports a conclusion that the recipient failed to comply with the law

OCR's determination will be explained in a letter of findings sent to the complainant and recipient. Letters of findings issued by OCR address individual OCR cases. Letters of findings contain fact-specific investigative findings and dispositions of individual cases. Letters of findings are not formal statements of OCR policy and they should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public.

## RESOLUTION OF THE COMPLAINT AFTER A DETERMINATION OF NONCOMPLIANCE

If OCR determines that a recipient failed to comply with one of the civil rights laws that OCR enforces, OCR will contact the recipient and will attempt to secure the recipient's willingness to negotiate a voluntary resolution agreement. If the recipient agrees to resolve the complaint, the recipient will negotiate and sign a written resolution agreement that describes the specific remedial actions that the recipient will undertake to address the area(s) of noncompliance

identified by OCR. The terms of the resolution agreement, if fully performed, will remedy the identified violation(s) in compliance with applicable civil rights laws. OCR will monitor the recipient's implementation of the terms of the resolution agreement to verify that the remedial actions agreed to by the recipient have been implemented consistent with the terms of the agreement and that the area(s) of noncompliance identified were resolved consistent with applicable civil rights laws.

If the recipient refuses to negotiate a voluntary resolution agreement or does not immediately indicate its willingness to negotiate, OCR will inform the recipient that it has 30 days to indicate its willingness to engage in negotiations to voluntarily resolve identified areas of noncompliance, or OCR will issue a Letter of Finding to the parties providing a factual and legal basis for a finding of non-compliance.

If, after the issuance of the Letter of Finding of non-compliance, the recipient continues to refuse to negotiate a resolution agreement with OCR, OCR will issue a Letter of Impending Enforcement Action and will again attempt to obtain voluntary compliance. If the recipient remains unwilling to negotiate an agreement, OCR will either initiate administrative enforcement proceedings to suspend, terminate, or refuse to grant or continue Federal financial assistance to the recipient, or will refer the case to the Department of Justice. OCR may also move immediately to defer any new or additional Federal financial assistance to the institution.

## RESOLUTION OF THE COMPLAINT PRIOR TO THE CONCLUSION OF THE INVESTIGATION

**Early Complaint Resolution (ECR):**

Early Complaint Resolution allows the parties (the complainant and the institution which is the subject of the complaint) an opportunity to resolve the complaint allegations quickly; generally, soon after the complaint has been opened for investigation. If both parties are willing to try this approach, and if OCR determines that Early Complaint Resolution is appropriate, OCR will facilitate settlement discussions between the parties and work with the parties to help them understand the legal standards and possible remedies. To the extent possible, staff assigned by OCR to facilitate the Early Complaint Resolution process will not be the staff assigned to the investigation of the complaint. OCR does not approve, sign or endorse any agreement reached between the parties as a result of Early Complaint Resolution, and OCR does not monitor the agreement. However, if the recipient institution does not comply with the terms of the agreement, the complainant may file another complaint with OCR within 180 days of the date of the original discrimination or within 60 days of the date the complainant learns of the failure to comply with the agreement, whichever date is later.

**Resolution of the Complaint Prior To the Conclusion of an Investigation**

A complaint may also be resolved before the conclusion of an investigation, if the recipient expresses an interest in resolving the complaint. If OCR determines that the resolution of the complaint before the conclusion of an investigation is appropriate, OCR will attempt to negotiate an agreement with the recipient. OCR will notify the complainant of the recipient's request and will keep the complainant informed throughout all stages of the resolution process. The provisions of the resolution agreement that is reached must be aligned with the complaint allegations and the information obtained during the investigation, and must be consistent with



applicable regulations. A resolution agreement reached before the conclusion of an investigation will be monitored by OCR.

## APPEAL OF OCR'S DETERMINATIONS

OCR is committed to a high quality resolution of every case. OCR affords an opportunity to the complainant to submit an appeal of OCR's letter finding insufficient evidence of a violation. The appeal process provides an opportunity for complainants to bring information to OCR's attention that would change OCR's decision. The appeal process will not be a de novo review of OCR's decision (i.e., OCR will not review the matter as if no previous decision had been rendered).

If the complainant disagrees with OCR's decision, he or she may send a written appeal to the Director of the Enforcement Office (Office Director) that issued the determination. If the complainant has documentation to support the appeal, the documentation must be submitted with the complainant's appeal. In an appeal, the complainant must explain why he or she believes the factual information was incomplete, the analysis of the facts was incorrect, and/or the appropriate legal standard was not applied, *and* how this would change OCR's determination in the case. Failure to do so may result in the denial of the appeal.

In order to be timely, an appeal (including any supporting documentation) must be submitted within 60 days of the date of the determination letter. The Office Director may exercise discretion in granting a waiver of the 60-day timeframe where:

> 1. the complainant was unable to submit the appeal within the 60-day timeframe because of illness or other incapacitating circumstances and the appeal was filed within 30 days after the period of illness or incapacitation ended; or
> 2. unique circumstances generated by agency action have adversely affected the complainant.

A written response to an appeal will be issued. A decision of the Office Director constitutes the agency's final decision. Such a decision will inform the complainant that he or she "may have the right to file a private suit in federal court whether or not OCR finds a violation."

## ADDITIONAL INFORMATION

### Right to File a Separate Court Action

The complainant may have the right to file suit in Federal court, regardless of OCR's findings. OCR does not represent the complainant in case processing, so if the complainant wishes to file a court action, he or she must do so through his or her own attorney or on his or her own through the court's pro se clerk's office.

If a complainant alleges discrimination prohibited by the Age Discrimination Act of 1975, a civil action in Federal court can be filed only after the complainant has exhausted administrative remedies. Administrative remedies are exhausted when either of the following has occurred:

1) 180 days have elapsed since the complainant filed the complaint with OCR and OCR has made no finding; or

4

2) OCR issues a finding in favor of the recipient. If this occurs, OCR will promptly notify the complainant and will provide additional information about the right to file for injunctive relief.

**Prohibition against Intimidation or Retaliation**

An institution under the jurisdiction of the Department of Education may not intimidate, threaten, coerce, or retaliate against anyone who asserts a right protected by the civil rights laws that OCR enforces, or who cooperates in an investigation. Anyone who believes that he or she has been intimidated or retaliated against should file a complaint with OCR.

**Investigatory Use of Personal Information**

In order to investigate a complaint, OCR may need to collect and analyze personal information such as student records or employment records. No law requires anyone to give personal information to OCR and no formal sanctions will be imposed on complainants or other persons who do not cooperate in providing information during the complaint investigation and resolution process. However, if OCR is unable to obtain the information necessary to investigate a complaint, we may have to close the complaint.

The Privacy Act of 1974, 5 U.S.C. § 552a, and the Freedom of Information Act (FOIA), 5 U.S.C. § 552, govern the use of personal information that is submitted to all Federal agencies and their individual components, including OCR. The Privacy Act of 1974 protects individuals from the misuse of personal information held by the Federal government. It applies to records that are maintained by the government that are retrieved by the individual's name, social security number, or other personal identifier. It regulates the collection, maintenance, use and dissemination of certain personal information in the files of Federal agencies.

The information that OCR collects is analyzed by authorized personnel within the agency and will be used by the government only for authorized civil rights compliance and enforcement activities. However, in order to investigate or resolve a complaint, OCR may need to reveal certain information to persons outside the agency to verify facts or gather additional information. Such details could include the name, age, or physical condition of the person who is the alleged subject of discrimination. Also, OCR may be required to reveal information requested under FOIA, which gives the public the right of access to records of Federal agencies. OCR will not release any information about a complainant to any other agency or individual except in the one of the 11 instances defined in the Department's regulation at 34 C.F.R. § 5b.9(b).

OCR does not reveal the name or other identifying information about an individual (including individuals who file complaints or speak to OCR) unless (1) such information would assist in the completion of an investigation or for in enforcement activities against an institution that violates the laws, or; (2) unless such information is required to be disclosed under the FOIA or the Privacy Act. OCR will keep the identity of complainants confidential except to the extent necessary to carry out the purposes of the civil rights laws, or unless disclosure is required under the FOIA, the Privacy Act or otherwise by law; or (3) such information is permitted to be disclosed under both the FOIA and the Privacy Act and OCR determines disclosure would further an interest of the Department and the United States.

However, OCR can release certain information about your complaint to the press or general public, including the name of the school or institution; the date your complaint was filed; the type of discrimination included in your complaint; the date your complaint was resolved, dismissed or



closed; the basic reasons for OCR's decision; or other related information. Any information OCR releases to the press or general public will not include your name or the name of the person on whose behalf you filed the complaint except as noted in the paragraph above.

FOIA gives the public the right of access to records and files of Federal agencies. Individuals may obtain items from many categories of records of the Federal government, not just materials that apply to them personally. OCR must honor requests for records under FOIA, with some exceptions. Generally, OCR is not required to release documents during the case evaluation and investigation process or enforcement proceedings, if the release could reasonably be expected to interfere with the affect the ability of OCR to do its job. 5 U.S.C. § 552(b)(7)(A). Also, a Federal agency may refuse a request for records if their release would or could reasonably be expected to result in an unwarranted invasion of privacy of an individual. 5 U.S.C. § 552(b)(6) and (7)(C). Also, a request for other records, such as medical records, may be denied where disclosure would be a clearly unwarranted invasion of privacy.

Updated February 19, 2015

[1]Complaints that allege discrimination based on age are timely if filed with OCR within 180 calendar days of the date the complainant first knew about the alleged discrimination.

**OFFICE FOR CIVIL RIGHTS**
**DEPARTMENT OF EDUCATION**
**WASHINGTON, D.C. 20202**

NOTICE ABOUT INVESTIGATORY USES OF PERSONAL INFORMATION

There are two laws governing personal information submitted to all Federal agencies including the Office for Civil Rights (OCR): The Privacy Act of 1974 [5 U.S.C. § 552(a) and the Freedom of Information Act [FOIA] [5 U.S.C. § 552]. This brief description will provide you with an overview of these laws.

**THE PRIVACY ACT** protects individuals from misuse of personal information held by the Federal Government. The law applies to records that are kept and that can be located by the individual's name or social security number or other personal identification system. Persons who submit information to the government should know that:

OCR has been authorized to investigate complaints of discrimination, on the basis of race, color, national origin, sex, disability and age, in institutions that receive Federal funds. The agency is also authorized to conduct reviews of Federally-funded institutions to assess their compliance with civil rights laws.

Information that OCR collects is analyzed by authorized personnel within the Office. This information may include personnel records, academic standing, or other personal information. OCR staff may need to reveal certain information to persons outside of the agency in the course of verifying facts or gathering new facts to develop a basis for making a civil rights compliance determination. Such details could include the physical condition or age of a complainant. OCR may also be required to reveal certain information to any individual who requests it under the provision of the FOIA. [See below]

Personal information will be used only for the specific purpose for which it was submitted, that is, for authorized civil rights compliance and enforcement activities. Except in the eleven instances defined in the Department's regulation, at 34 C.F.R. § 5b.9(b), OCR will not release that information to any other agency or individual submits a written consent. One of these exceptions is when release is required under the FOIA. [See below]

No law requires a complainant to give personal information to OCR, and no sanctions will be imposed on complainants or other individuals who deny OCR's request. However, if OCR fails to obtain information needed to investigate allegations of discrimination, it may be necessary to close the investigation.



The Privacy Act permits certain types of systems of records to be exempt from some of its requirements, including the access provisions. It is the policy of the Department to exercise authority to exempt systems of records only in compelling cases. The Department has issued regulations which allow OCR to deny a complainant access to the files compiled during the investigation of his or her civil rights complaint against a recipient of Federal financial assistance. The Department exercised its authority to exempt the complaint files and log system of records to aid negotiations between recipients and OCR in resolving civil rights issues and to encourage recipients to furnish information essential to the investigation.

**THE OFFICE FOR CIVIL RIGHTS** does not reveal the names or other identifying information about an individual unless it is necessary for the completion of an investigation or for enforcement activities against an institution that violates the laws, or unless such information is required to be disclosed under FOIA or the Privacy Act. OCR will keep the identity of complainants confidential except to the extent necessary to carry out purposes of the civil rights laws, or unless disclosure is required under the FOIA, Privacy Act or otherwise required by law.

**THE FREEDOM OF INFORMATION ACT** gives the public access to certain files and records of the Federal Government. Individuals can obtain items from many categories of records of the Government – not just materials that apply to them personally. The Office for Civil Rights must honor requests under the FOIA, with some exceptions. OCR generally is not required to release documents during an investigation or enforcement proceedings if the release could have an adverse effect on the ability of the Office to do its job. Also, any Federal agency may refuse a request for records complied for law enforcement purposes if their release could be an "unwarranted invasion of privacy" of an individual. Request for other records, such as personnel and medical files, may be denied where the disclosure would be a "clearly unwarranted invasion of privacy."

## NOTICE OF COMPLAINANT/INTERVIEWEE RIGHTS AND PRIVILEGES

Complainants and individuals who cooperate in an investigation proceeding or hearing conducted by OCR are afforded certain rights and protections. This brief description will provide you with an overview of these rights and protections.

A recipient may not force its employees to be represented by the institution's counsel nor may it intimidate, threaten, coerce or discriminate against any employee who refuses to reveal to the recipient the content of an interview. An employee does, however, have the right to representation during an interview with OCR. The representative may be the recipient's counsel, the employee's private counsel, or anyone else the interviewee authorizes to be present. See Appendix P for acknowledgement form for interviewee.

The laws and regulations which govern OCR's compliance and enforcement authority provide that no recipient or other person shall intimidate, threaten, coerce or discriminate against any individual because he/she has made a complaint, testified, assisted or participated in any manner in an investigation, proceeding or hearing conducted under OCR's jurisdiction.



Information obtained from the complainant or other individuals, which is maintained in OCR's investigative files may be exempt from disclosure under the Privacy Act or under the FOIA if release of such information would constitution an unwarranted invasion of privacy.

50

## AFFIDAVIT OF SERVICE BY MAIL

State of New York          :
                                          SS:
County of _Onodaga_     :

*Rosevelt Beal*
*office of civil Rights*

I, _Rosevelt Beal_, being duly sworn, deposes and says: that I am the

plaintiff herein and served a copy of the following document(s):

_Petition, Poor man's application_ (Specify document(s)

on _office of civil Rights / SUNY chancellor's office_ (Name of person/Addressee)

at: _Northern District court ot_ New York (Address to which document(s)

_100 S-Clinton str-_ were sent)
_Syracuse, N·Y· 13202_

by mailing and depositing a true and correct copy of said document(s) in a mailbox located

at: _JESUP, GA_ ,

on the following date: _6/7/16_ .

I declare under penalty of perjury that the foregoing is true and correct.

DATED: _____          *Rosuelt Beal*_____

Signature of Plaintiff

Sworn to before me this _7th_ day of _JUNE_, _2016_ .

_Patricia Dieveney_____
Notary Public

