# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

ROSEVELT BEAL,

                Plaintiff,

                              6:16-CV-666
      v.                           (BKS/ATB)

SUNY CORTLAND, et al.,

                Defendants.

ROSEVELT BEAL, Plaintiff pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court a civil rights complaint, filed pursuant to 42 U.S.C. § 1983. (Complaint "Compl.") (Dkt. No. 1). Plaintiff has also filed a motion to proceed in forma pauperis ("IFP"). (Dkt. No. 2). For the following reasons, this court will grant plaintiff's IFP application, but will recommend dismissal of the action with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

## I.  In Forma Pauperis ("IFP") Application

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. The court finds for purposes of this recommendation, that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss

the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Facts

Plaintiff has filed this action against the State University of New York ("SUNY") Cortland and SUNY Binghamton. Plaintiff includes the "the SUNY Chancellor's Office" and the "Office of Civil Rights." (Complaint ("Compl.") at 1)[1] (Dkt. No. 1). Plaintiff claims that defendants discriminated against him because of his race and "retaliated" against him. Plaintiff then cites a variety of statutes under which he purports to bring this action, including, but not limited to, Title IX of the Education Amendments of 1972 ("Title IX"); 14th Amendment Due Process;[2] 20 U.S.C. § 99.10 "student access to records," Titles III, V, and VI of the Civil Rights Act of 1964, and "Title 34 – Education § 100.7 Conduct of investigation."[3] (*Id.*)

In addition to plaintiff's statement of the facts, plaintiff has attached and incorporated a substantial number of exhibits which, together with his factual recitation, clarify plaintiff's claims in this action.[4] The court will attempt to review and summarize the pertinent facts. In 1998, plaintiff was attending SUNY Cortland, pursuing a Bachelor's Degree in Political Science. He was charged with a violation of the Code of Student Conduct for harassing one of his professors and was suspended

---

[1] Unless otherwise noted, the court will cite to the pages as numbered by the court's electronic filing system CM/ECF.

[2] Plaintiff also states that he has a 14th Amendment right to "pursue happiness." (Compl. at 1).

[3] Because plaintiff is suing state actors for alleged due process violations, this court will also interpret the complaint as attempting to bring a section 1983 action.

[4] One of these exhibits is the decision of New York State Supreme Court Justice Phillip Rumsey, after plaintiff's appeal of his disciplinary hearing. (Compl. at 29-34).

3

pending a hearing.[5] The hearing was presided over by a "judicial coordinator." The judicial coordinator found plaintiff guilty and recommended sanctions to the President of SUNY Cortland. Plaintiff claimed that the hearing was "unjust." (Compl. at 3). However, the President of SUNY Cortland adopted the hearing officer's recommendation.

As a result, plaintiff was suspended from attending classes or participating in University activities for one year until December of 1999. After that time, he would be allowed to apply for readmission, but would have to produce evidence that he had obtained counseling to deal with his anger. (Compl. at 29). Plaintiff claimed that the charges were false, and that he was denied due process at the hearing. Plaintiff then filed an Article 78 proceeding, challenging the procedures utilized at the hearing and arguing that the decision was "arbitrary and capricious."[6] (*Id.* at 29-30). After hearing oral argument on June 17, 1999, Judge Rumsey issued a written decision, dated June 23, 1999, denying plaintiff's petition. (*Id.* at 29-34).

In February of 1999, prior to his Article 78 proceeding, plaintiff filed a discrimination complaint with defendant Office of Civil Rights ("OCR"). OCR actually stands for "Office for Civil Rights" of the United States Department of

---

[5] Plaintiff was also charged with "Disorderly Conduct." Plaintiff has attached the "Notification of Administrative Hearing (JRB) Decision" to his complaint. This decision contains the specific charges and additional facts. (Compl. at 11-14).

[6] Plaintiff's Article 78 petition is also attached to the complaint. (Compl. at 24-27).

4

Education ("DOE").⁷ OCR is a federal entity.⁸ www2.ed.gov/about/offices/list/ocr/index.html. Plaintiff alleges that OCR failed to conduct a "legitimate" investigation and attempted to have plaintiff arrested on false allegations which were "handled by the federal police."⁹ (Compl. at 3).

Plaintiff alleges that in January of 2000, he was assisted by State Senator Thomas Libous in getting admitted to SUNY Binghamton. (Compl. at 4). Plaintiff alleges that he completed three courses for twelve credits, but mid-way through the semester, he was falsely told that he had run out of financial aid. (*Id.*) Plaintiff claims that even though SUNY Binghamton allowed him to finish his courses, the school denied plaintiff to his grades until he paid "[$]3000.00 up front." (*Id.*) Plaintiff stated that after years of "contending (off and on) with Binghamton regarding access to grades[, i]n

---

⁷ Although plaintiff's original complaint to OCR is not included in the exhibits, there is a letter to plaintiff from OCR, dated February 25, 1999, referencing his complaint and his concerns about the investigator who was assigned to the case. (Compl. at 54). The letter clearly shows that plaintiff filed a complaint with OCR that was assigned a case number 02-99-2017. (*Id.*) There are several letters from OCR in the plaintiff's exhibits. Plaintiff has attempted to reopen and reargue this 1999 investigation in recent years. Two of the more recent letters from OCR to plaintiff explain the reasons why such reopening or reconsideration was denied. (Compl. at 59-60, 61-62). One letter is addressed to plaintiff (T. 59-60), and the second letter is addressed to the Honorable Johnny Isakson, United States House of Representatives (T. 61-62). The letter to Representative Isakson is dated November 3, 2015 and contains a detailed explanation of plaintiff's attempts to have his cases investigated. The November 3, 2015 letter addresses plaintiff's complaints against both SUNY Cortland and SUNY Binghamton. (*Id.*)

⁸ OCR's website states that OCR enforces five federal civil rights laws that prohibit discrimination on the basis of race, color, national origin, sex, disability, and age in programs or activities that receive federal financial assistance from the DOE.

⁹ Plaintiff does not elaborate on who these "federal police" might be, nor does he state any facts relating to the alleged "arrest."

5

January of 2012, plaintiff filed a complaint with FERPA to no avail."[10] (Compl. at 4, 35). One of plaintiff's exhibits is part of a letter from OCR to plaintiff, dated January 4, 2012, discussing his complaint to OCR and raising alleged FERPA violations against SUNY Binghamton.

Plaintiff states that in November of 2013, he filed another complaint with OCR against SUNY Binghamton regarding the denial of financial aid and access to grades. (Compl. at 4). Plaintiff again claims that OCR did not conduct "a legitimate investigation," and the agency either kept poor records or was "intentionally wanting to create confusion." (*Id.*)

Plaintiff states that he returned to school in 2004 at Elmira College and again in 2010 at South University and Strayer University in Georgia. (*Id.*) Plaintiff claims that, in 2010, "NYSHED illegally placed the plaintiff in default at the end of his third semester, despite his loans being in . . . school [deferment] as are all loans of students who are actively engaged in school." (*Id.*) Plaintiff alleges that in October of 2015, he asked the Governor's office to look into this situation, but "[t]he office" failed to do anything about it, and even canceled plaintiff's in-person meeting. Plaintiff states that the "inquiry" was a "request to be granted his degree in Political Science." Plaintiff then details the credits that he states he has in support of his request to be conferred his degree. (*Id.*) Plaintiff does allege that SUNY Binghamton "finally forwarded a transcript to Excelsior College," but it only contained one grade because the school was

---

[10] FERPA is the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, 34 C.F.R. Pt. 99. This statute protects the privacy of student educational records.

unable to locate the other two classes. (Compl. at 5).

Plaintiff alleges that "after dealing with SUNY Headquarters," Ms. Droz "ignored [his] dilemma," and plaintiff sent the letter to Senator Isackson's office in Georgia.[11] Plaintiff states that he filed another complaint with OCR regarding the credits, and OCR gave plaintiff the "false" excuse that he was merely raising the same claims that were previously denied. (*Id.*) Plaintiff states that "presently" he has "regained his motivation" to return to school, and is attending Excelsior College, but he should not have to do because he already earned his degree.

Plaintiff concludes that SUNY Cortland, SUNY Binghamton, the SUNY Chancellor's Office, and OCR have all violated the statutes listed above, and have discriminated against plaintiff based on his race. Plaintiff states that these violations are "clearly displayed" in the case of SUNY Cortland, and it is "only reasonable to conclude" that the rest of the defendants did the same thing when they denied plaintiff financial aid, access to his records, denied his degree, and failed to investigate his claims. (*Id.*) Plaintiff alleges that OCR was "well aware" of the racial discrimination and the due process violations at the plaintiff's administrative hearing, but the agency did not properly investigate the issues. (Compl. at 5-7). Plaintiff claims that, because of defendants' conduct, his plans to attend law school were frustrated. Plaintiff seeks only for the court to grant him his degree "according to the federal laws of this country and NYS." (Compl. at 7).

---

[11] Plaintiff currently has a Georgia address.

### III. Statutes of Limitations

#### A. Legal Standards

The statute of limitations for Title IX cases is three years from the time that the cause of action accrued. *Curto v. Edmundson*, 392 F.3d 502, 503-504 (2d Cir. 2004). In *Curto*, the court found that Title IX does not contain a statute of limitations, and that Title IX claims are most closely analogous to personal injury actions. *Id.* at 504 (citations omitted). Therefore, the court borrowed the New York State statute of limitations for personal injury actions.[12] *Id*. The same statute of limitations applies to cases brought pursuant to Title VI and pursuant to 42 U.S.C. §§ 1983, 1981.[13] *Id.* (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (§ 1983); *Tadros v. Coleman*, 898 F.2d 10, 12 (2d Cir. 1990) (per curiam) (§ 1981); *Morse v. Univ. of Vermont*, 973 F.2d 122, 126 (2d Cir. 1992) (acknowledging that "the federal trend [for claims brought under Title VI] is to look to the statute of limitations used in analogous federal discrimination actions such as those brought under 42 U.S.C. §§ 1981, 1983"). *See also Diaz v. City University of New York*, No. 15 Civ. 1319, 2016 WL 958684, at *2 (S.D.N.Y. Mar. 8, 2016) (Title VI). In New York, personal injury claims must be filed within three years from the time the cause of action accrued. N.Y. C.P.L.R. § 214(5).

---

[12] The court specifically rejected the application of the "four-year federal catch-all statute of limitations" contained in 28 U.S.C. § 1658(a). 392 F.3d at 504 (citing *Jones v. R.R. Donnelley & Sons Co*, 541 U.S. 369 (2004)).

[13] Plaintiff also cites "Title III" and "Title V" as bases for jurisdiction. However, Title III applies only to discrimination based on disability. *Farbstein v. Hicksville Pub. Lib.*, 323 F. Supp. 2d 414, 419 (E.D.N.Y. 2004). There is also a Title V of the Americans with Disabilities Act ("ADA") which prevents retaliation. 42 U.S.C. § 12203(a). However, plaintiff does not claim discrimination based on disability. Thus, any such claims would have to be dismissed.

Accrual of claims is governed by federal law. *Twersky v. Yeshiva University*, 579 F. App'x 7, 9 (2d Cir. 2014). A claim accrues when "'comes into existence,'" and when the plaintiff "'has a complete and present cause of action.'" *Id.* citing *Gabelli v. S.E.C.*, __ U.S. __, 133 S. Ct. 1216, 1220 (2013)). Under the "discovery" accrual rule, a cause of action accrues when "with reasonable diligence, the plaintiff has or should have discovered the critical facts of both his injury and its cause.'" *Id.* (quoting *AQC ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011) (internal quotation marks omitted).

### B. Application

Plaintiff's claims against SUNY Cortland accrued in 1998, when the allegedly discriminatory conduct occurred. Any claims against SUNY Binghamton accrued in 2000, when the allegedly discriminatory conduct occurred. Title IX plaintiffs are not required to exhaust administrative remedies prior to bringing suit. *Gardner v. St. Bonaventure Univ.*, 171 F. Supp. 2d 118, 127-28 (W.D.N.Y. 2001). Thus, plaintiff could have filed suit when he believed that he was being subjected to racial discrimination by each university. Plaintiff filed this action June 13, 2016. (Dkt. No. 1). Three years from the accrual date have long since expired. Unless the claims are subject to tolling, plaintiff's claims against both universities are time barred, regardless of the basis for plaintiff's claims against the universities.[14]

---

[14] Plaintiff does not specifically cite 42 U.S.C. § 1983 as a basis for jurisdiction. However, he alleges that SUNY Cortland violated his due process rights under the Fourteenth Amendment. Section 1983 provides a cause of action for an individual whose constitutional rights have been violated by a person who acts under color of state law. Section 1983 would be the only basis for plaintiff to bring such a claim, and as stated above, the statute of limitations for a section 1983 action is three years.

To the extent that plaintiff claims that the running of statute of limitations may be avoided because the defendants' conduct constitutes a "continuing violation," this argument cannot succeed. Courts have recognized the concept of a continuing violation. *See e.g. Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994); *Shannon v. Recording Industry Ass'n of America*, 661 F. Supp. 205, 210 (S.D. Ohio) (citation omitted). Under the continuing violation doctrine, if a plaintiff has endured a "continuous practice and policy of discrimination," the statute of limitations may not begin to run until the last discriminatory act in furtherance of the policy. *Chandrapaul v. City University of New York*, No. 14 Civ. 790, 2016 WL 1611468, at *13 (E.D.N.Y. Apr. 20, 2016) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). However, the courts have not looked favorably on the application of this doctrine, and have applied it only under "compelling" circumstances. *Id.* (quoting *Libbey v. Vill. of Atl. Beach*, 972 F. Supp. 2d 185, 212 (E.D.N.Y. 2013) (internal quotation marks omitted).

The continuing violation doctrine, is not implicated simply by multiple individual acts that are not the result of a policy. *Troeger v. Ellenville Cent. Sch. Dist.*, No. 1:10-CV-718, 2012 WL 1605532, at *3 (N.D.N.Y. May 8, 2012) (citation omitted). The court must distinguish between a "continuing violation" and a violation with

---

Thus, any attempt to bring constitutional claims against the universities would be time barred. Plaintiff recognizes that he has been told on many occasions that his claims are time-barred. (Compl. at 2). He argues that because the Constitution does not contain a statute of limitations, one does not exist because Constitutional liberties are "ongoing." (*Id.*) Plaintiff is only partially correct. While there are no statutes of limitations in the Constitution, courts have recognized a statute of limitations for section 1983, which is the jurisdictional basis for such constitutional claims. Thus, plaintiff's argument cannot succeed.

10

"continuing consequences." *Melendez v. Schneiderman*, No. 9:13-CV-622, 2014 WL 2154536, at *12 (N.D.N.Y. May 22, 2014) (citing *Ruane v. County of Suffolk*, 923 F. Supp. 2d 454, 460 (E.D.N.Y. 2013) (distinguishing a due process case in which the constitutional injury included the failure to afford a hearing, with a case in which the claim was based on an unconstitutional hearing with continuing consequences)). A single violation with continuing consequences does not extend the accrual of the statute of limitations past the original act. *Id.* (citing *Doe v. Blake*, 809 F. Supp. 1020, 1025 (D. Conn. 1992); *Shannon v. Recording Indust. Ass'n of Amer.*, 661 F. Supp. 205, 210 (S.D. Ohio 1987)).

In this case, to the extent that plaintiff implies that SUNY Cortland and SUNY Binghamton's actions continued to harm him until the present, he is essentially alleging one violation with continuing consequences. Such allegations are insufficient to extend the statute of limitations.

In some circumstances, the doctrine of equitable tolling may extend the statute of limitations past the time of expiration as necessary to avoid inequitable circumstances. *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). Equitable tolling principles have applied when plaintiff "actively" pursued his judicial remedies, but filed a defective pleading within the appropriate time period. *Brown v. Parkchester S. Condominiums*, 287 F3d 58, 60 (2d Cir. 2002) (citations omitted). Equitable tolling has also been applied where plaintiff was prevented in some "extraordinary" way from asserting his rights, or where he asserted his rights in the wrong forum. *Johnson*, 86 F.3d at 12. In determining whether equitable tolling applies, the court must find that

plaintiff acted reasonably diligently throughout the period that he seeks to toll. *Id.*

There is nothing in this action that would justify the application of equitable tolling. Plaintiff concedes that he has known about his claims for seventeen years. Although he states that he has been pursuing his claims, there is nothing that has prevented plaintiff from filing a federal action within the statute of limitations against SUNY Cortland or SUNY Binghamton. Thus, the statute of limitations has run, and there appears to be no tolling equitable or otherwise that would change this finding.

Generally, a court should not dismiss a complaint as time-barred without providing the pro se plaintiff with notice and an opportunity to be heard as to whether there might be a meritorious tolling argument or other reason why the complaint may be considered timely. *Abbas v. Dixon*, 480 F.3d 636, 640-41 (2d Cir. 2007). In this case, plaintiff has already expressed his reasons for tolling the statute of limitations, and they cannot succeed.[15]

---

[15] Plaintiff is asking the "courts grant his degree according to the federal laws of this country and NYS." (Compl, at 7). However, the court does not grant degrees. In addition, the New York Court of Appeals has held that an educational institution itself is not required to grant a diploma to a student who fails to meet the institution's standards, and that "courts should shun the 'diploma by estoppel' doctrine." *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 415 (1980). It is "essential" that the decision surrounding the issuance of degrees "be left to the sound judgment of the professional educators who monitor the progress of their students on a regular basis." *Id.* at 413. *See also Rosenthal v. New York Univ.*, No. 08 Civ. 5338, 2010 WL 3564975, at *3 & n.40 (S.D.N.Y. Sept. 13, 2010) (discussing *Olsson*)). Plaintiff in *Rosenthal* requested that the court order the university to confer his degree. The court discussed the plaintiff's claims in terms of the "implied contract" between a university and its students, but rejected the plaintiff's claim, finding that the decision was fully within the faculty's power and discretion. *Id.* at * 3. In addition, with respect to SUNY Binghamton, plaintiff concedes that the university did release plaintiff's grades to the extent that they were still available. Thus, there is no relief that the court could afford plaintiff at this time.

## IV. Office of Civil Rights

The court would first point out that the Office of Civil Rights is a federal agency, part of the United States Department of Education. To the extent that plaintiff's complaint could be interpreted as being brought pursuant to section 1983 for alleged constitutional violations, this section would not be applicable to the Office of Civil Rights. Suits against individual federal officials for alleged constitutional violations are brought pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). A suit against a federal *agency* is essentially a suit against the United States which does not derive jurisdiction from *Bivens*. *Polanco v. United States Drug Enforcement Agency*, 158 F.3d 647, 650 (2d Cir. 1998).

In a suit against the United States, there must be "a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity." *Presidential Gardens Assocs. v. United States ex rel. Sec. of Housing and Urban Development*, 175 F.3d 132, 139 (2d Cir. 1999). Sovereign immunity may be waived only by statute. *Presidential Gardens Assocs.* 175 F.3d at 139 (citing *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998)).

There is no private cause of action against the DOE for the agency's finding of no discrimination. *Anderson v. Bd. of Regents of Higher Ed. of the Commonwealth of Mass.*, No. 93 Civ. 5162, 1994 WL 507741, at *5 (S.D.N.Y. Sept. 15, 1994). The implementing regulations for Title VI authorize the DOE to investigate allegations of discrimination, initiate Title VI compliance reviews, and take administrative measures against illegal discrimination by recipients of federal education funds. However,

13

neither Title VI, nor its implementing regulations create a private right of action against the DOE based on the enforcement or failure to enforce the statute. *Id.* While Title VI and Title IX may permit private rights of action against the *recipients* of the funds, no right of action lies against the DOE or OCR themselves.

In addition to the extent that plaintiff's complaint may be interpreted as a claim under the Administrative Procedure Act ("APA"), investigative decisions or the failure to act upon complaints of discrimination are "discretionary" and not reviewable under the APA. *Sherman v. Black*, 315 F. App'x 347, 348-49 (2d Cir. 2009) (citing 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 582–83 (2d Cir. 1987)). In *Sherman*, the court dismissed plaintiff's complaint and stated that, although the plaintiff disagreed with the outcome, the OCR clearly evaluated the evidence he presented and found that the school had legitimate non-discriminatory reasons for the actions that it took. *Id.* at 349. The court stated that

> Although Sherman argues that the OCR failed to conduct an investigation into his complaint, the evidence in the record . . . indicates that the OCR conducted the type of investigation required by 34 C.F.R. § 100.7(c). In the OCR's responses to Sherman, it reviewed the evidence, discussed the circumstances alleged in Sherman's complaint, and determined that his allegations did not warrant further action. This is all that was required. . . . Although Sherman disagrees with the outcome, the OCR clearly evaluated the evidence he presented and found that the medical school had legitimate, non-discriminatory reasons for dismissing him.

*Id.* (citations omitted). In this case, the same is clear from the several letters from OCR

that plaintiff has attached to his complaint.

In addition, it is clear, in general, that there is no constitutional right to an investigation of any sort by government officials. *See Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008); *Lewis v. Gallivan*, 315 F. Supp. 2d 313, 317 (W.D.N.Y. 2004) (citing cases). In order for a constitutional violation to have occurred, the investigation itself must have resulted in the deprivation of a constitutional right. *Faison v. Hash*, 03-CV-6475P, 2004 WL 944523, at *6 (W.D.N.Y. April 23, 2004) (citation omitted).

As stated above, plaintiff disagrees with the result of the investigation and therefore, he believes that the investigation must have been incomplete or biased. Plaintiff has written several complaints to OCR, and he has been told on various occasions that the issue has already been investigated, and the case is closed. Plaintiff's disagreement with the results cannot be the subject of a federal law suit. Thus, any claims as against the Office of Civil Rights must be dismissed with prejudice.[16]

## V. SUNY Chancellor

There are very few facts in the body of the complaint which relate to the "Chancellor." It appears from the plaintiff's exhibits that he wrote to the Governor's Office in Albany, and his letter was referred to the Office of Academic Affairs and the Provost in Albany for a response. (Compl. at 53). Plaintiff received a letter from Elizabeth Droz, Assistant Vice Chancellor for Student Affairs, dated May 1, 2014 in

---

[16] In addition, there is no relief requested against this defendant. The court notes that plaintiff asks only for injunctive relief, consisting of the court ordering defendants to confer a Political Science Degree on plaintiff. Clearly the OCR has no authority to grant plaintiff his degree.

which she explains that plaintiff's concerns were reviewed "extensively" with SUNY Cortland, and the review determined that SUNY Cortland followed appropriate procedures in the handling of the matter related to his status at the College. (*Id.*) The letter further informed plaintiff that SUNY's office of General Counsel reviewed plaintiff's situation "years ago and responded to allegations you cited at that time." Another review was conducted in response to plaintiff's "current" letter, and it was determined that no violation of the law occurred. (*Id.*) A copy of the letter was sent to the SUNY Chancellor, the Office of General Counsel, and SUNY Cortland. (*Id.*)

Plaintiff alleges that "Ms. Droz ignored my delemma," and sent a letter, denying plaintiff's request. (Compl. at 5). Once again, plaintiff disagrees with the outcome of the investigation. As stated above, plaintiff has no right to any investigation by government officials, and thus, he may not sue the SUNY Chancellor for an allegedly inadequate investigation. There is no other basis for plaintiff's claim against this defendant.

**WHEREFORE**, based on the findings above, it is

**ORDERED,** that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

16

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 21, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge